OPINION JUSTICE DONOHUE We granted the petition for allowance of appeal ’ filed by Daniel F. Loughnane (“Loughnane”) to determine whether the Superior Court erred by holding that the federal automobile exception, adopted by this Court in Commonwealth v. Gary, 625 Pa. 183, 91 A.3d 102 (2014),[1] permitted the seizure of Loughnane’s truck while it 'was parked in his residential driveway. Commonwealth v. Loughnane, 128 A.3d 806, 817 (Pa. Super. 2015). For the reasons that follow, we conclude that Gary does not operate to permit the warrantless seizure of a vehicle parked on a defendant’s residential driveway. We therefore vacate and remand for further proceedings consistent with this Opinion. I. Facts ■ At- approximately 2:23 -a.m. on July 24, 2012, a large, dark-colored truck- with a loud exhaust system ran over- and killed nineteen-year-old Rebecca McCallick while she lay in the roadway on Hazle Street in Wilkes-Barre, Pennsylvania. This happened in front of the apartment she-shared with her boyfriend, John Schenck/ III (“Schenck”), who .observed the- accident from their second story window. The truck did not stop. Schenck provided several statements to members of the Wilkes-Barre- Police Department, describing the truck in question and identifying a vehicle in a photograph shown to him by police that he believed “looked like” the truck that struck- his girlfriend. N.T.; 2/18/2014; at 97. ■ ■ On August 8, 2012, Schenck’s father came across a truck parked in a residential driveway on Liberty Street in Ashley, that he believed fit Schenck’s description. Detective David Sobócihski instructed him to have Schenck view -the vehicle. Schenck’s father took a photograph of the truck and showed it to Schenck, who identified it as the vehicle involved in the accident. . That afternoon, Detective Sobocinski went to the address where Sche,nek’s father had observed the truck. He learned that Loughnane owned the residence and the truck parked.in the driveway. Unable to reach Loughnane at home, the detective went to various locations in an attempt to find him or to obtain' contact information for him — including Loughnane’s place of business, his neighbors’ homes, and the home of Loughnane’s parents — all without success. During this time, Detective Sobo-cinski left the truck unattended. Detective Sobocinski then contacted the Assistant District Attorney on call for direction as to how to proceed. The detective had been made aware that the keys to the truck were somewhere in the vehicle, and he also stated his concern that forecasted rain could compromise any forensic evidence that remained on the truck from the July 24 incident. According to Detective Sobocinski, obtaining a search warrant would have required that he “contact the District Attorney’s Office and go over things, [and] type up the actual affidavit that goes along with the search warrant,” which he characterized as “time consuming,” taking “two to three hours.” Id. at 169-70. Although Hanover Township sent a police officer to Loughnane’s house in response to Detective Soboeinski’s request for assistance, he did not ask the officer to wait with the car while he obtained a warrant to seize the vehicle. Instead, early in the morning on August 9, 2012, “numerous hours” after first arriving at Loughnane’s house, police seized the truck without first obtaining a warrant and had it towed to the Wilkes-Barre Police garage. Id. at 172. Four days later, the detective sought and obtained a warrant to search Lough-nane’s vehicle. The search of the vehicle revealed no physical or forensic evidence. On August 14, 2012, Schenck came to the police station and identified the truck by sight and sound as the vehicle that was involved in the accident. II. Proceedings Before the Court of Common Pleas The Commonwealth charged Loughnane with accidents involving death or personal injury, 75 Pa.C.S. § 3742(a). On July 30, 2012, Loughnane filed an omnibus pretrial motion contending, inter alia, that police illegally seized his truck from his private property without a warrant and that as a result, all evidence obtained from the search after the seizure must be suppressed as fruits of the poisonous tree. At that time, warrantless searches and seizures of motor vehicles were presumptively unlawful pursuant to what has been referred to as Pennsylvania’s “limited automobile exception,” unless police had (1) probable cause to believe that the vehicle was itself or contained evidence of criminal activity, and (2) exigent circumstances beyond the mobility of the vehicle that precluded them from obtaining a warrant. See, e.g., Commonwealth v. Hernandez, 594 Pa. 319, 935 A.2d 1275, 1280 (2007). Then and now, the existence of both probable cause and exigent circumstances are also required before police may conduct a warrantless search or seizure of property from a person’s home. See, e.g. Commonwealth v. Wright, 560 Pa. 34, 742 A.2d 661, 664 (1999); Commonwealth v. Johnson, 474 Pa. 512, 379 A.2d 72, 75 (1977); Commonwealth v. Bowmaster, 101 A.3d 789, 792 (Pa. Super. 2014). Before the suppression court, the Commonwealth conceded that police had seized Loughnane’s truck from his private property, but contended that exigent circumstances permitted entry upon his private property and the seizure of the truck therefrom without a warrant. See N.T., 2/18/2014, at 164. Following a hearing on February 18, 2014, the suppression court disagreed, concluding that there were no exigent circumstances to justify the war-rantless seizure of Loughnane’s truck from his residential driveway, rendering the seizure illegal under Article I, Section 8 of the Pennsylvania Constitution.[2] Suppression Court Order, 3/17/2014, ¶¶ 36-38. The court suppressed the visual and sound identification of the truck made by Schenck, concluding that they were the fruits of the unlawful seizure. Id., ¶¶ 42-45. III. Commonwealth Appeal to the Superior Court On March 28, 2014, the Commonwealth appealed this interlocutory order to the Superior Court. See Pa.R.A.P. 311(d). After the Commonwealth filed its notice of appeal, but before the Commonwealth filed its brief in the Superior Court, this Court decided Gary. In Gary, a majority of the Court adopted the federal automobile exception to the warrant requirement, albeit without' any majority rationale for doing so.[3] See generally, e.g., Robinson Twp. v. Commonwealth, 147 A.3d 536, 547-49 (Pa. 2016) (explaining the precedential aspects of our prior decision in Robinson Twp. v. Commonwealth, 623 Pa. 564, 83 A.3d 901 (2013), which produced, in part, a majority holding but not a majority opinion). The federal automobile exception permits the search and/or seizure of a vehicle without a warrant as long as police have probable cause to believe the vehicle contains (or is itself) evidence of criminal activity. The federal automobile exception “has no separate exigency requirement.” See, e.g., Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam). In its brief filed in the Superior Court, the Commonwealth did not raise the applicability of Gary. Nor did it argue for the application of the pre-Gary “limited automobile exception” extant in Pennsylvania at the time of the seizure and the hearing before the suppression court. Instead, before the Superior Court, the Commonwealth’s sole argument was that although Loughnane’s truck was seized from the curtilage[4] of the home, exigent circumstances (i.e., the mobility of the vehicle and the possibility of inclement.weather) existed to permit the warrantless seizure. Commonwealth’s Superior Court Brief at 21 (“These exigent circumstances justified entry upon the curtilage.”). To advance its argument, the Commonwealth relied exclusively on the Superior Court’s prior curti-lage jurisprudence. Id. at 19-21 (citing Commonwealth v. Simmen, 58 A.3d 811, 815-16 (Pa. Super. 2012) (holding, based on the features of the driveway at issue there, the property did not constitute cur-tilage); Commonwealth v. Gibbs, 981 A.2d 274, 280 (Pa. Super. 2009) (same, for the front porch at issue); Commonwealth v. Fickes, 969 A.2d 1251, 1259 (Pa. Super. 2009) (finding that the garage in question constituted curtilage, but that the warrant-less entry therein by police was supported by probable cause and exigent circumstances)). The Superior Court, however, held as a matter of law that a driveway can never constitute curtilage. Loughnane, 128 A.3d at 817. In support of this conclusion, the Superior Court relied upon Simmen. Although Simmen held that the driveway in question did not constitute curtilage based on an analysis of its particular features,[5] the Superior Court in this case cited it for the blanket • proposition that “[c]urtilage ... has not been extended to an individual’s driveway.” Loughnane, 128 A.3d at 816. 'The Superior’ Court then considered, as an issue of first impression, whether the automobile exception applies to vehicles parked in a defendant’s private driveway. In concluding that the automobile exception applied, the court relied principally on á decision by the Supreme Judicial Court of Massachusetts, Commonwealth v. A Juvenile (No. 2), 411 Mass. 157, 580 N.E.2d 1014 (1991). In A Juvenile, the Massachusetts court applied the automobile exception to permit the warrantless seizure of a vehicle from the defendant’s residential driveway. In so doing, the court differentiated the facts of the case from those present in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), wherein the United States Supreme Court held that the automobile exception did not apply to permit the warrantless seizure of a vehicle.from the. defendant’s residential driveway (discussed at length later in this Opinion). Specifically, the A Juvenile court found that, unlike in Coolidge, probable cause to seize the vehicle at issue arose unexpectedly, when the police observed the damage to the vehicle parked in the driveway, and there was a concern that the defendant could remove the car if police left to obtain a warrant. A Juvenile, 580 N.E.2d at 1018. The A Juvenile court further observed, based, on existing Massachusetts precedent, that “[t]he degree to which a possessor of a driveway may reasonably expect that his activities thereon are private ‘will generally depend upon the nature of the activities and the. degree of visibility from the street.’ ” Id. at 1017 (quoting Commonwealth v. Simmons, 392 Mass. 45, 466 N.E.2d 85 (1984)). Based upon the particular facts of. that case, the A Juvenile court concluded that entry upon the defendant’s driveway by police to observe the exterior of the vehicle did not constitute a “search”: [T]he automobile was parked in a private driveway; the driveway and the automobile on it were clearly visible from a public way; the driveway was the normal route by which to approach the front door of the residence; no intrusion into the automobile was required; there was a garage at the end of the driveway, but the defendant did not use it; and the owner of the automobile had taken no other steps to conceal the parked automobile from public view. Id. at 1016. In this case, the Superior Court found that the facts surrounding the warrantless seizure of Loughnane’s truck were analogous to those in A Juvenile, because “[Loughnane]’s truck was. visible on the driveway in plain view, from the street.”[6] Loughnane, 128 A.3d at 817. Based on the A Juvenile decision and the statement in Simmen that the defendant in that case lacked a reasonable expectation of privacy in his driveway (see supra, note 5), the Superior Court concluded that Loughnane had no protectable expectation of privacy' in the vehicle in his driveway. Loughnane, 128 A.3d at 817. It further held that “an individual does not have a reasonable expectation of privacy over the driveway.” Id. The Superior Court then concluded that pursuant to Gary, “the mere mobility of the truck itself is adequate for a finding of exigent circumstances, and that the Commonwealth has' met its burden in demonstrating that exigent circumstances existed at the time the truck was seized.” Id, Because the suppression court based its decision exclusively on the absence of exigent circumstances, the Superior Court remanded the case for the suppression court to make a determination of whether police had probable cause to permit the warrant-less seizure of Loughnane’s truck. Id, As summarized, the ■ Superior Court’s analysis, resulting in a -published opinion, deviated from the arguments presented by the parties. In the Superior Court,the Commonwealth • conceded ■ that Lough-nane’s. truck was parked on the curtilage of his home and that, as a result, it was required.to prove that exigent circumstances (plus probable cause) existed to permit its warrantless seizure of the vehi-' ele. The Commonwealth’s sole argument was that exigencies existed to allow a war-rantless seizure from Loughnane’s curti-lage. Although Gary had been decided when the Commonwealth submitted its brief to the Superior Court, it did not argue either that the limited automobile exception or the newly-adopted automobile exception provided the necessary exigency to justify the warrantless seizure of Loughnane’s vehicle. The Superior Court, however, rejected the Commonwealth’s curtilage argument in toto, ruling instead that private driveways may never constitute a part of the curtilage of a home.[7] The Superior Court then, sua sponte, ruled that the automobile exception, as adopted in Gary, applied to vehicles parked in private driveways and thus eliminated the need for the Commonwealth to make any separate showing of exigency (aside from the mobility of the truck itself). Challenging the ultimate holding of the Superior Court, Loughnane requested allowance of appeal, which we granted to answer the following question: “Whether the Superior Court erred by holding that the automobile exception, adopted in Commonwealth v. Gary, 625 Pa. 183, 91 A.3d 102 (2014), allowed police to seize a vehicle from the defendant’s private residential driveway without a warrant?” Commonwealth v. Loughnane, 158 A.3d 1224 (Pa. 2016) (per curiam). IV. The Automobile Exception and Residential Driveways Loughnane asserts, that the Superior Court’s conclusion that the automobile exception applies to vehicles parked in a private residential driveway conflicts with United States Supreme Court precedent that has long distinguished between the seizure of a vehicle from public property and a seizure of a vehicle from private property. Loughnane’s Brief at 22, 25-27 (citing Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); Florida v. White, 526 U.S. 559, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999)). Loughnane argues that pursuant to this controlling precedent, the automobile exception is per se inapplicable to vehicles parked in residential driveways. Id. at 32.[8] The Commonwealth counters that Loughnane’s position is legally- unsupportable absent a finding that the driveway is part of the curtilage of the home and argues, contrary to its position in the Superior Court, that Loughnane’s driveway was not curtilage. Commonwealth’s Brief at 9. The Commonwealth does not address the precedent cited by Loughnane. Instead, it insists that the automobile exception must apply to vehicles located on residential driveways because it is premised upon the mobility of a vehicle, and “a vehicle does not become less mobile because it is parked feet away from a public street on a residential driveway.” Id. at 11-12. ■ Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy. Commonwealth v. Enimpah, 630 Pa. 357, 106 A.3d 695, 699 (2014). An expectation of privacy exists if a person has a subjective expectation of privacy that society is willing to recognize as legitimate and reasonable. Commonwealth v. Gordon, 546 Pa. 65, 683 A.2d 253, 256 (1996). Where there exists a reasonable expectation of privacy, Article I, Section 8 and the Fourth Amendment generally require police to obtain a warrant, issued by a neutral and detached magistrate and founded upon probable cause, prior to conducting a search or seizure of a person and/or a person’s property, unless one of the few well delineated exceptions apply. Commonwealth v. Arter, 151 A.3d 149, 153 (Pa. 2016). One such exception is the automobile exception, adopted by this Court in Gary, which permits the search and/or seizure of a motor vehicle if supported by probable cause — no separate finding of exigent circumstances is required. See, e.g., Dyson, 527 U.S. at 466-67, 119 S.Ct. 2013; United States v. Ross, 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The United States Supreme Court has announced two justifications for the automobile exception: (1) the inherent mobility of a motor vehicle and (2) the Court’s conclusion that an individual has a reduced expectation of privacy in a vehicle as compared to an individual’s home or office. Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (per curiam). The high Court has explained that a vehicle’s mobility creates an exigency because “the opportunity to search is fleeting since a car is readily movable.” Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). According to-the Court, the -reduced expectation of privacy in a motor vehicle is based on the public nature of travel, which allows anyone to view the contents of the car and its occupants; the frequent, often noneriminal contact police have with motor vehicles; and the “pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements” to which vehicles .are exposed. S. Dakota v. Opperman, 428 U.S. 364, 367-68, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). Addressing the latter points, the Court has stated, “As an. everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.” Id. at 368, 96 S.Ct. 3092. In Coolidge v. New Hampshire, a majority of the United States Supreme Court held that the automobile exception did not operate to permit the warrantless seizure of the defendant’s unattended vehicle, which was parked in his residential driveway 'following his arrest. Justice Stewart authored the Opinion, joined in full by Justices Douglas, Brennan and Marshall. Justice Harlan authored a Concurring Opinion, agreeing that the automobile exception did not apply under the circumstances, concluding that “a contrary result in this ease would ... go far toward relegating the warrant requirement of the Fourth Amendment to a position of little consequence in federal search and- seizure law.” Coolidge, 403 U.S. at 491-92, 91 S.Ct. 2022 (Harlan J., concurring).[9] Though -the rationale behind the inapplicability of the automobile-exception did not garner majority support in Coolidge, Justice. Stewart, joined by Justices Douglas, Brennan and Marshall, explained that there was no basis for excusing the warrant requirement under the facts of the case. Id. at 460-62, 91 S.Ct. 2022 (plurality). The plurality found it significant that the police had known for some time prior to the seizure of the likely role the defen-, dant’s car -played in the murder he was believed to have perpetrated. As such, the defendant had already had “ample opportunity” to destroy incriminating evidence prior to the seizure and subsequent search of the vehicle, and the car was not'being used for any illegal purpose on the night in question. Id. at 460, 91 S.Ct. 2022 (“The opportunity for search was thus hardly ‘fleeting.’ ”). It expressly recognized “a significant constitutional difference betwéeh stopping, seizing, and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose.” Id. at 464 n.20, 91 S.Ct. 2022. “The word ‘automobile’ is not a talisman in whose presence the Fourth Amendment fades away and disappears.” Id. at 461, 91 S.Ct. 2022. Subsequent to Coolidge, the United States Supreme Court decided California v, Carney. In Carney the Court explained why the .automobile exception does apply when a vehicle is located in a public place, i.e., “in a place not regularly used for residential purposes.” Carney, 471 U.S. at 392-93, 105 S.Ct. 2066 (emphasis added). According to the Court, “[w]hen a vehicle is being used on the highways, or if it is readily capable of such use,” then “the two justifications for the vehicle exception [ (its. ready mobility and the reduced expectation of privacy based on its use as a motor vehicle subject to a litany of regulations) ] come into play.” Id. In other words, when a vehicle is being used on the public highways, as opposed sitting idle on a private driveway (as in Coolidge), “the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable.” Id. Carney involved the question of whether “a fully mobile ‘motor home’, located án a public place” constituted a vehicle or a residence for Fourth Amendment. purposes. Id. at 387, 105 S.Ct., 2066. Because the motor home in question was readily mobile, was licensed, to travel on public streets, and was parked in a public parking lot, the Court held that the automobile exception applied to permit the warrant-less search of the motor home based ■ on the presence of probable cause alone. Id. at 393, 105 S.Ct. 2066. The Court concluded that “[ajpplying the vehicle exception in these circumstances allows the essential purposes .served by the exception to be fulfilled, while assuring that the exception will acknowledge legitimate privácy interests.” Id. at 394, 105 S.Ct. 2066; see also Cardwell v. Lewis, 417 U.S. 583, 593, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality) (finding thé seizure of a vehicle from a public place lawful under the automobile exception, differentiating Coolidge based on the vehicle’s location); Ross, 456 U.S. at 807 n.9, 102 S.Ct. 2157 (explaining the holding in Chambers as permitting police, with “probable cause to justify a warrant-less seizure of an- automobile on a public roadwaj^’ to “conduct an immediate search of the contents of that -vehicle”) (emphasis added). The high' Court again reaffirmed the difference, for Fourth Amendment purposes, of the, seizure of a vehicle from public versus priváte property for purposes of the automobile exception in Florida v. White. In White, an asset forfeiture case, the United States Supreme Court held that the Fourth Amendment does not require police to obtain a warrant prior to seizing an automobile from a public place if the police have probable cause to believe that the vehicle constitutes forfeitable contraband. White, 526 U.S. at 561, 119 S.Ct. 1555. In reaching this conclusion, the Court differentiated the seizure of a vehicle from “public streets, parking lots, or other open places” from the seizure of a vehicle that occurs on “private premises,” as the former does not result in any invasion of an individual’s privacy. Id. at 566, 119 S.Ct. 1555. Because the seizure in White occurred in the parking lot of a restaurant where White was employed and the police had probable cause to believe that the vehicle was forfeitable contraband, the high Court concluded that the automobile exception to the warrant requirement applied and “the Fourth Amendment did not require a warrant to seize respondent’s automobile in these circumstances.” Id. A majority of the circuit courts of appeals that, have considered the question have recognized that, pursuant to Coolidge and/or Carney, the automobile exception does not apply to vehicles parked ⅛ the defendant’s residential driveway.[10] In United States v. Bradshaw, 490 F.2d 1097 (4th Cir. 1974), for example, the fourth circuit found unlawful, pursuant to Coolidge, the warrantless search of a vehicle parked on the defendant’s property, which police had probable cause to believe contained illegal moonshine. Id. at 1103. The court found that the automobile exception did not apply because there was no risk of loss of evidence and because of the enhanced expectation of privacy a defendant enjoys for a vehicle parked on his own property. Id. The fifth, seventh, eighth and tenth circuits have also all held, based on the plain language of Carney, that the automobile exception does not apply to vehicles parked in a place used as a residence. See, e.g., United States v. Sinisterra, 77 F.3d 101, 105 (5th Cir. 1996) (recognizing, pursuant to Carney, that the automobile exception operates to permit warrantless searches/seizures of stationary vehicles only if parked in a place not regularly used for residential purposes, but finding that the automobile exception applied to a vehicle parked in a mall parking lot because it “was not related to anyone’s residence, it was open to the public and available for public use”); United States v. Beene, 818 F.3d 157, 164 (5th Cir. 2016) (same), cert. denied, — U.S. -, 137 S.Ct. 113, 196 L.Ed.2d 91 (2016); United States v. Markling, 7 F.3d 1309, 1319 (7th Cir. 1993) (same, for a vehicle parked in a motel parking lot); United States v. Holleman, 743 F.3d 1152, 1158 (8th Cir. 2014) (same); United States v. Ludwig, 10 F.3d 1523, 1529 (10th Cir. 1993) (same).[11] A majority of the highest courts of our sister states that have considered the issue have likewise held that the automobile exception does not apply to a search and/or seizure of a vehicle parked on private residential property.[12] We find compelling the rationale for so holding provided by the Indiana Supreme Court in State v. Hobbs, 933 N.E.2d 1281 (Ind. 2010): The theory underlying the exception for vehicles is that the vehicle is “being used for transportation.” Put another way, a public parking lot is typically an interim destination, but a home’s driveway is often the end of that day’s travels. We recognize' that police might anticipáte finding an automobile at a suspect’s home. However, permitting the exception to apply where the vehicle may be expected to be found would open the door to warrantless searches where there is no reason to avoid the judicial oversight contemplated by the Fourth Amendment. Id. at 1286 (internal citations to Carney and Coolidge omitted). Consistent with the pronouncements of the United States Supreme Court in Coolidge and Carney, it is clear that the dual bases underlying the automobile exception to the warrant requirement are inapposite to vehicles parked in a defendant’s residential driveway. Absent exigent circumstances, the concern about the inherent mobility of the vehicle does not apply, as the chance to search and/or seize the vehicle is not fleeting. See Chambers, 399 U.S. at 51, 90 S.Ct. 1975. The vehicle is parked where the defendant lives and it will typically either remain there or inevitably return to that location. Moreover, because the vehicle is parked on a private residential driveway, the reduced expectation of privacy in a vehicle that has been recognized by the High Court likewise does not pertain. The “public nature of automobile travel” as it “travels public thoroughfares” plainly has no application to a car parked in a person’s driveway. See Opperman, 428 U.S. at 368, 96 S.Ct. 3092. Further, automobiles are not subject to pervasive regulation while parked in a driveway, nor do police have frequent noncriminal contact with vehicles so situated. These bases for the reduced expectation of privacy only become applicable when the car is on the public streets. See, e.g., 75 Pa.C.S. § 4703(a) (“no motor vehicle required to bear current registration plates issued by this Commonwealth ... shall be moved on a highway ... unless the vehicle displays a currently valid certificate of inspection issued under this chapter”) (emphasis added). As none of the justifications for the automobile exception apply to vehicles parked in a residential driveway, there is no reason for the exception to apply. To permit the automobile exception to excuse the warrant requirement for the seizure of the defendant’s vehicle parked on the defendant’s residential property would allow the exception to swallow the rule. See State v. LeJeune, 276 Ga. 179, 576 S.E.2d 888, 892 (2003) (“There is an automobile exception to the search warrant requirement, not an exemption.”) (emphasis added); see also Coolidge, 403 U.S. at 481, 91 S.Ct. 2022 (“the exceptions [to the warrant requirement] cannot be enthroned into the rule”). As Loughnane aptly observes, the automobile exception did not “wholly eviscerate the important privacy protections” afforded under both the Fourth Amendment and Pennsylvania’s Article I, Section 8, such that “the police need[ ] only to yell ‘car’ in order to seize a persons’ private property from their [c]astles.” Lough-nane’s Brief at 34. We therefore hold, based on the plain language of Coolidge and Carney, that the automobile exception did not apply to Loughnane’s vehicle when it was parked on his private residential driveway. In such circumstances, warrantless searches and/or seizures of an automobile must be supported by both probable cause and exigent circumstances. Y. Expectation of Privacy in Sight and Sound of Vehicle The Commonwealth alternatively argues that Loughnane has no reasonable expectation of privacy ■ in the appearance or sound of his vehicle, rendering any evaluation of the infringement upon his constitutional rights unnecessary. Commonwealth’s Brief at 13-17. We reject this assertion because it misses the point entirely. It is one thing for the police to have a person identify a vehicle from a lawful vantage point on the street; it is quite another to enter onto a portion of a person’s property where the individual has a reasonable expectation of privacy, seize the person’s property without a warrant, and only after the seizure, allow the witness to view the vehicle and turn on the ignition of the vehicle so the witness can identify its appearance and sound as that of the vehicle involved in the accident. See Commonwealth v. Milyak, 508 Pa. 2, 493 A.2d 1346, 1348 (1985) (recognizing that although a “visual observation of an article may not violate any reasonable expectation of privacy,” the seizure of that article may trigger the application of constitutional protections). VI. Conclusion Based on the foregoing determinations of error by the Superior Court, we vacate its decision and remand the case to that court for further consideration consistent with this Opinion.[13] Jurisdiction relinquished. Justices Baer, Todd, Dougherty and Wecht join the opinion. Justice Mundy files a concurring opinion. Chief Justice Saylor files a concurring and dissenting opinion. . The lead opinion in Gary was designated as an “Opinion Announcing the Judgment of the Court” (the “OAJC”) because while a majority of the Court supported the adoption of the' federal automobile exception, only a plurality joined in the rationale behind it. See 210 Pa. Code § 63.4(B)(3) ("An opinion shall be designated as the 'Opinion Announcing the Judgment of the Court’ when it reflects only the mandate, and not the rationale, of a majority of Justices.”), The OAJC, authored by Justicé McCaffery, was joined by two Justices (Chief Justice Castille and Justice Ealdn) of the then-six member Court. Then-Justice, now Chief Justice Saylor, wrote-, a concurring opinion, providing the fourth vote for the adoption of the federal automobile exception. Justice Todd authored á dissenting opinion, joined by Justice Baer. . "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.” Pa. Const, art. I, § 8. . See supra, note 1. Justice Saylor concurred in the result, joining the OAJC only as to its adoption of the federal automobile exception to the warrant requirement “for the sake of certainty and consistency” based on his view of the historical difficulty this Court has had “in managing the appropriate contours of the automobile exception to the warrant requirement.” See Gary, 91 A.3d at 138-39 (Saylor, J., concurring). . “Curtilage” is an area adjacent to one’s home that is nonetheless afforded the same constitutional protections as one’s home because it is "associated with the sanctity of a man's home and privacies of life.” Commonwealth v. Oglialoro, 525 Pa. 250, 579 A.2d 1288, 1292 (1990); Commonwealth v. Lee, 972 A.2d 1, 3 n.2 (Pa. Super. 2009). As noted above, the existence of both probable cause and exigent circumstances are required before police may conduct a warrantless search or seizure of property from a person’s home (including its curtilage). See, e.g. Wright, 742 A.2d at 664; Johnson, 379 A.2d at 75; Bowmaster, 101 A.3d at 792. . In Simmen, the Superior Court relied upon the trial court’s particularized analysis: Based on the description of the driveway, and the location of the car on it, there was no evidence'presented at the time of the suppression hearing to support an assertion that there was any expectation of privacy in the area. The driveway was in the front of the house,’’ leading from the street to the garage contained within the actual residence. The car was parked in plain view of the street on the driveway, within twenty (20) feet of the road. There was no evidence of signs warning against trespass on the driveway or that the driveway was gated or fenced or shielded from the view of the street in any way. In fact, it appears from the description of the house that access to the front door of the residence was made via the driveway. These facts certainly suggest that there could be no reasonable expectation of privacy in the area of the driveway. Simmen, 58 A.3d at 815-16, . We find no support in the certified record for this finding. Neither the testimony at the suppression hearing nor the suppression court’s findings of fact indicate that the truck was visible from the street. The Superior .Court relies on the fact that Schenk’s father saw the truck and reported it to police, but nothing in the record indicates where Schenk’s father was when he made this observation. Moreover, as we discuss later in this Opinion, even -if the truck waswisible from the . street, this fact does not render the automobile exception applicable, nor does it preclude a finding that Loughnane had a reasonable expectation of privacy in portions of his drive- . way. . The Superior Court's blanket statement that "driveways are not part of a home’s curti-lage,” Loughnane, 128 A.3d at 817, is a misstatement of the law. As Loughnane observes, the Superior Court’s holding on this issue was contrary to both its own established legal precedent and that from the United States Supreme Court, all requiring curtilage determinations to be made on a case-by-case multi-factorial basis. See, e.g., United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (setting forth factors that courts can consider to reach a curtilage' determination; but cautioning that no one test defines what constitutes curtilage); Oliver v. United States, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (stating that curtilage determinations have been made by referencing factors that may give rise to an expectation of privacy in a given area outside of the home, dating back to common law); Commonwealth v. Eichler, 133 A.3d 775, 784 (Pa. Super. 2016) (“Eichler's truck was within the curti-lage, even though it also happened to be parked in his driveway.”); Commonwealth v. Simmen, 58 A.3d 811, 815-16 (Pa. Super. 2012) (applying a multi-factorial approach to determine that the driveway in question was not part of the curtilage); see also Florida v. Jardines, 569 U.S. 1, 7, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) (stating that "the conception defining the curtilage” is drawn "from our daily experience”). The Commonwealth concedes that the Superior Court’s ruling was a misstatement of the law. Commonwealth’s Brief at 10-11 (acknowledging that Pennsylvania courts "have required the consideration of many factors” when determining whether particular areas of property, including driveways, constitute curtilage). . Without significant development of the argument, Loughnane also questions the prece-dential value of the decision in Gary. Lough-nane’s Brief at 20 n.3. Loughnane’s amicus, Pennsylvania Association of Criminal Defense Lawyers (“PACDL”) separately contends that Gary is inconsistent with the increased privacy protections provided by Article I, Section 8 of the Pennsylvania Constitution, compared to the Fourth Amendment to the United States Constitution, as previously recognized by this Court. See PACDL’s Brief at 16-19. However, Loughnane did not request, and we therefore did not grant, allowance of appeal to reconsider the rationale proffered by the plurality in Gary to determine whether the adoption of the federal automobile exception is supportable under the Pennsylvania Constitution. See Pa.R.A.P. 1115(a)(3) ("Only the questions set forth in the petition, or fairly comprised therein, will ordinarily be considered by the court in the event an appeal is allowed.”). . Justices White and Black each authored a minority opinion which, in relevant part, dissented from the Majority’s.conclusion that the automobile exception did not apply under the circumstances presented. This position was joined by Chief Justice. Burger and Justice. Blackman. . The second, third- and eleventh circuit courts of appeals have not decided, addressed or discussed this question. The.first circuit has not decided the issue, but has expressed its doubt, pursuant to Coolidge;. that the automobile exception applies to a vehicle parked on the curtilage of the home. United States v. Ramirez-Rivera, 800 F.3d 1, 30 (1st Cir. 2015) (resolving the case based on the absence of probable cause), cert. denied, — U.S. -, 136 S.Ct. 908, 193 L.Ed.2d 800 (2016), and cert. denied sub nom. Laureano-Salgado v. United States, — U.S. -, 136, S.Ct. 917, 193 L.Ed.2d 800 (2016). The-sixth circuit has recognized,, pursuant to Coolidge, that there is a difference "between the. seizure of an automobile parked in the defendant’s driveway and one that the police have stopped- and is readily mobile.” United States v. Swanson, 341 F.3d 524, 531-32 (6th Cir. 2003). . Only the ninth circuit court of appeals has expressly held that the automobile exception applies to the search/seizure of a vehicle parked in the defendant’s residential driveway. United States v. Hatley, 15 F.3d 856, 859 (9th Cir. 1994). In so holding, the court relied upon its prior decision in United States v. Hamilton, 792 F.2d 837 (9th Cir. 1986), disapproved of on other grounds by United States v. Kim, 105 F.3d 1579 (9th Cir. 1997). In Hamilton, however, the court upheld the war-rantless search of a mobile home parked in someone else’s residential driveway. Id. at 843. Moreover, we note that in an earlier case, the ninth circuit held that the automobile exception was inapplicable to the seizure of a car parked in the defendant’s residential driveway. United States v. McCormick, 502 F.2d 281, 287 (9th Cir. 1974). Neither Hatley nor Hamilton cited to, discussed or differentiated McCormick. Two circuit courts of appeal have applied the automobile exception to vehicles located on private driveways, but did so without any discussion either of the location of the vehicle or their own circuit’s contrary precedent. United States v. Hines, 449 F.3d 808, 814 (7th Cir. 2006); United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir. 2000); United States v. Blaylock, 535 F.3d 922, 926-27 (8th Cir. 2008). . The highest courts of Nebraska, Indiana, Georgia, North Carolina, Louisiana and New York have recognized, pursuant to Coolidge and/or Carney, that the automobile exception does not apply to the search and/or seizure of a vehicle parked on the defendant's residential property. See State v. Rocha, 295 Neb. 716, 890 N.W.2d 178, 207 (2017) ("the requirement of ready mobility for the automobile exception is met whenever a vehicle that is not located on private property is capable or apparently capable of being driven on the roads or highways”); State v. Hobbs, 933 N.E.2d 1281, 1285-86 (Ind. 2010) (“an operable vehicle found in a residential area may not be searched under [the automobile] exception, but one located in a non-residential area, whether by reason of a police stop or not, is subject to the exception”); State v. LeJeune, 276 Ga. 179, 576 S.E.2d 888, 892-93 (2003) (the automobile exception does not apply to a car legally parked in a residential parking space, where no other exigent circumstances existed and police seized and towed the vehicle without a warrant); State v. Isleib, 319 N.C. 634, 356 S.E.2d 573, 575-77 & n.1 (1987) (automobile exception applies to cars parked in “a public area”); State v. Hernandez, 410 So.2d 1381, 1384 n.1 (La. 1982) (stating that the automobile exception would not apply to a car parked on the defendant’s private property); People v. Kreichman, 37 N.Y.2d 693, 376 N.Y.S.2d 497, 339 N.E.2d 182, 186-87 (1975) (regarding the difference between seizures of vehicles on the open highway and on private property as "crucial" because “it reflects the balance between the pragmatics of social protection and the ideal of the utmost personal privacy tolerable in organized society”); but see Collins v. Commonwealth, 292 Va. 486, 790 S.E.2d 611, 619 (2016), cert. granted, — U.S. -, 138 S.Ct. 53, 198 L.Ed.2d 780, 2017 WL 736341 (2017); Keehn v. State, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009); Commonwealth v. A Juvenile (No. 2), 411 Mass. 157, 580 N.E.2d 1014, 1018 (1991); State v. Cox, 290 S.C. 489, 351 S.E.2d 570, 571 (1986) (per curiam). . In particular, we note that the Superior Court has not yet reviewed the Commonwealth’s- claims that certain exigent circumstances permitted police to enter- upon Loughnane’s curtilage to seize his vehicle. For example, the Commonwealth argued that the potential for the disappearance or destruction of evidence caused by possible inclement weather created an exigency,