J-A18004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT BENJAMIN WILEY, III | : | |
| | : | |
| Appellant | : | No. 1377 WDA 2018 |

Appeal from the Judgment of Sentence Entered August 24, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002729-2017

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 3, 2020**

Robert Benjamin Wiley, III, appeals from the imposition of thirty to sixty months of incarceration followed by five years of probation, after a judge convicted him of possession with intent to deliver ("PWID")–cocaine.  After careful review, we vacate the judgment of sentence, reverse the trial court's suppression order, and remand for a new trial.[1]

For several months, Detective Jason Triana and other members of the Erie Police Department conducted surveillance of Appellant and his residence, located at 245 West 16th Street, after a confidential informant ("CI") told police that Appellant was supplying him with crack cocaine from that residence.  ***See***

---

[1] Despite requesting and receiving an extension of time, the Commonwealth did not file an advocate's brief.  Therefore, we have gleaned the Commonwealth's position from the record below.

N.T. Omnibus Pre-Trial Hearing, 4/11/18, at 21. At Detective Triana's direction and while under his surveillance, the CI made multiple controlled purchases of crack cocaine from Appellant at his residence while using marked U.S. currency. *Id*. at 23. As a result of these controlled buys, on July 25, 2017, Detective Triana obtained a search warrant for Appellant's residence. *Id*. at 24-25.

Detective Triana was aware that Appellant had a meeting with his probation officer on July 26, 2017, at 10:00 a.m., so he waited until Appellant left for the meeting before executing the search warrant. *Id*. at 25-26. Officers observed Appellant exiting his residence with a light-colored opaque bag in hand. *Id*. at 2. Appellant entered the passenger side of a Buick Regal, which was driven by his sister. *Id*. at 43. Officers discreetly followed and watched as the Buick came to a stop at West 17th Street and Sassafras Street. *Id*. Appellant exited the vehicle and proceeded, on foot, between two houses on West 17th Street before approaching a silver Ford Fusion, which was parked in a private driveway. *Id*. Detective Michael Chodubski watched as Appellant opened the trunk of the vehicle, which he noticed had three flat tires. *Id*. at 28. Appellant then closed the trunk and returned to the Buick. No one saw Appellant place the bag in the trunk. *Id*. at 52. However, when Appellant returned to the Buick he was no longer carrying it. After a sweep of the area, officers determined that Appellant must have placed the bag in the trunk of

the Ford, and they had one officer remain with the vehicle while the other officers continued to follow Appellant. *Id*. at 44.

The Buick next stopped at the Erie County Courthouse where Appellant's probation officer was located, and police took Appellant into custody. When Appellant was issued his ***Miranda***[2] warnings, he volunteered that police would not find any drugs in his house. *Id*. at 53. Upon overhearing police discussing the Ford, he interjected that the vehicle was his. *Id*. at 55. Thereafter, he refused to answer any further questions about the vehicle or the location of the drugs. Instead, he repeatedly stated that "he just wanted to go to the county, take me to the county." *Id*. at 53. Ultimately, the Erie police determined that the Ford was registered to Appellant's uncle, Desmond Martin, not to Appellant. *Id*. at 55. Further, the search of the house uncovered five Methylenedioxymethamphetamine ("MDMA") pills and $6,480.00, including marked currency that had been given to Appellant by the CI. *Id*. at 31. No crack cocaine or packaging materials were uncovered at the residence. *Id*. at 32.

Meanwhile, because the Ford had three flat tires, the Erie police towed it to a parking garage. ***See*** Commonwealth Exhibit C, Affidavit of Probable Cause, 7/26/17, at 6. At the suppression hearing, Detective Triana testified that the vehicle was towed because the area where the car was located was

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

highly populated due to a popular market across the street. *See* N.T. Omnibus Pre-Trial Hearing, 4/11/18, at 34. Pennsylvania State Trooper J. Casey arrived with his certified dog to perform a canine sniff. The canine alerted at the vehicle's trunk and both driver and passenger sides of the Ford. *Id*. at 39. That same day, Detective Triana secured a search warrant for the vehicle based on the canine alerts. *Id*. When searching the trunk, Detective Triana recovered the light-colored bag that Appellant had been seen carrying earlier that day. *Id*. at 42. Inside the bag, Detective Triana found crack cocaine, marijuana, a scale, and baggies. *Id*.

The Commonwealth charged Appellant with PWID-cocaine, PWID-marijuana, PWID-MDMA, possession of cocaine, possession of marijuana, possession of MDMA, and possession of drug paraphernalia. Appellant filed an omnibus pretrial motion seeking to suppress the evidence seized from the Ford. Appellant also filed a petition for a writ of *habeas corpus* requesting that the court dismiss the charges of PWID-marijuana and PWID–MDMA pills.

On April 11, 2018, a hearing was held on Appellant's omnibus pretrial motion. Detective Triana testified that they towed the car, in part, because that procedure had been sanctioned when undertaken by the Erie Police Department in *Commonwealth v. Williams*, 2 A.3d 611 (Pa.Super. 2010).[3]

_____

[3] In *Commonwealth v. Williams*, 2 A.3d 611 (Pa.Super. 2010), Erie police drove an automobile, which they had probable cause to search, from a private driveway to a public garage in order to perform a canine sniff. The dog

Appellant offered testimony that he was the sole owner and operator of the vehicle, even though he was not the registered owner. *See* N.T. Omnibus Pre-Trial Hearing, 4/11/18, at 62-63. He also asserted that the vehicle was parked in his grandmother's private residential driveway with her express permission. *Id*. Following the hearing, both sides submitted briefs. Ultimately, after receiving testimony and reviewing supplemental briefs, the trial court denied suppression, holding that the canine sniff provided an independent source that established probable cause for the search warrant.

On July 3, 2018, Appellant proceeded to a non-jury trial. At the beginning of the trial, the Commonwealth withdrew all of the charges with the exception of PWID-cocaine. Counsel stipulated to a lab report that 46.57 grams of cocaine were recovered from the vehicle and that this amount was consistent with a person who possessed cocaine with the intent to deliver it to others, not merely for personal use. At the conclusion of the trial, the court found Appellant guilty of PWID-cocaine.

Appellant was originally sentenced to serve thirty-three months to seven years of incarceration followed by five years of probation. After Appellant filed a post-sentence motion requesting reconsideration of his sentence, a second hearing was held. On August 23, 2018, the trial court issued an amended

_____

alerted, a search warrant was obtained, and drugs were recovered from the vehicle in the search that resulted. We affirmed the trial court's denial of suppression on the basis of the independent source doctrine. We discuss this case in detail below.

sentencing order, reducing Appellant's sentence to thirty to sixty months of incarceration followed by five years of probation. Appellant filed a timely notice of appeal and complied with a court ordered directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In response, the trial court issued its Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues for our review:

I.   Whether or not the trial court erred in denying [Appellant's] omnibus pre-trial motion/motion to suppress any and all evidence seized from the Appellant's 2012 silver Ford Fusion SE bearing Pennsylvania plate JTV442 following the illegal towing of the said vehicle from private property on July 26, 2017?

II.  Whether or not the city of Erie police had reasonable suspicion based on articulable facts that illegal narcotics and/or other contraband would be found in Appellant's silver Ford Fusion SE on July 26, 2017 thus, justifying the "dog-sniff" of Appellant's vehicle?

III. Whether or not probable cause was established within the four corners of the search warrant if the information gleaned from the illegal "dog-sniff" of the Appellant's vehicle is excised from the affidavit of probable cause in support of the search warrant?

Appellant's brief at 5.

All three of Appellant's claims attack the trial court's denial of his omnibus pre-trial motion to suppress.

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as

- 6 -

remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (internal brackets and citation omitted).

Before we may proceed to a determination of Appellant's substantive claims we must first discern whether Appellant has established standing to challenge the search of the automobile and a privacy interest in the contents of it. *Commonwealth v. Burton*, 973 A.2d 428, 434-35 (Pa.Super. 2009). Our Supreme Court has emphasized that these are distinct analyses:

While curiously similar, standing and privacy interest are different concepts serving different functions. Standing is a legal interest that empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution. It ensure a defendant is asserting a constitutional right of his own. The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated. In essence, while a defendant's standing dictates when a claim under Article I, § 8 may be brought, his privacy interest controls whether the claim will succeed – once a defendant has shown standing, he must, in short, have brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises.

*Commonwealth v. Enimpah*, 106 A.3d 695, 698-99 (Pa. 2014) (citations and quotations omitted).

Since Appellant was charged with a possessory offense, he automatically had standing to challenge the suppression of the items seized. *Commonwealth v. Viall*, 890 A.2d 419, 421 (Pa.Super. 2005). However, whether Appellant established a legitimate expectation of privacy in the vehicle's contents is a closer question. *See*, *e.g.*, *Commonwealth v. Perea*, 791 A.2d 427, 429 (Pa.Super. 2002) (finding that an appellant had not established a privacy interest in a vehicle where he merely possessed the keys needed to unlock it, without any paperwork to show ownership or any other legitimate connection to it).

Article 1, § 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution protect individuals from unreasonable searches and seizures, but only in areas where an individual enjoys a reasonable expectation of privacy. *See Commonwealth v. Parker*, 619 A.2d 735, 737 (Pa.Super. 1993). A reasonable expectation of privacy exists when an individual exhibits an actual subjective expectation of privacy and that expectation is one that society is prepared to recognize as legitimate. *Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa.Super. 2005). In order to discern whether an expectation of privacy is reasonable, the totality of the circumstances must be considered and the societal interests involved must be balanced. *Id*. at 118 ("The constitutional legitimacy of an expectation of

privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.").

Appellant argues that he has shown a reasonable expectation of privacy in the Ford through his own statement asserting ownership to the police when he was arrested, along with his corroborating testimony at the suppression hearing. Appellant's brief at 19. Additionally, he notes that he had a key to the vehicle on his person when he was arrested. *Id*. Finally, while Appellant could not legally operate the vehicle because he had a suspended license, he claims the Commonwealth offered nothing at the hearing to dispute his claim of ownership. N.T. Omnibus Pre-Trial Hearing, 4/11/18, at 72 (arguing that the vehicle belonged to him because he repeatedly asserted ownership and the Commonwealth had done nothing to counter his claims).

It is well-established that the defendant bears the burden of persuasion with respect to his privacy interest. ***Commonwealth v. Gordon***, 683 A.2d 253, 256 (Pa. 1996). However, the defendant's burden does nothing to absolve the Commonwealth from its burden of proof. To the contrary, the Commonwealth maintains burdens of production and persuasion throughout the entire criminal proceedings to prove that it did not obtain the challenged evidence in violation of the defendant's rights. ***Enimpah, supra*** at 701; ***see also*** Pa.R.Crim.P. 581(H). Therefore, it necessarily follows that the Commonwealth may concede a defendant's privacy interest if it offers no

rebuttal witnesses or contrary argument to a defendant's assertions. ***Enimpah***, ***supra*** at 701. If the Commonwealth chooses to focus only on the legality of the police conduct, than a defendant does not need to establish a privacy interest. ***Id***.

A review of the suppression hearing transcript reveals that the Commonwealth never argued that Appellant did not have a reasonable expectation of privacy in the vehicle at the suppression hearing. Despite introducing testimony from Detective Triana that Appellant was not the registered owner of the vehicle, once Appellant offered testimony explaining the discrepancy between the registration and his claims of ownership, the Commonwealth did nothing to counter his testimony. Although the Commonwealth requested time to brief the issue, when it filed a brief it did not address this argument. ***See*** N.T. Omnibus Pre-Trial Hearing, 4/11/18, at 77-78; ***see also*** Commonwealth's Response to Defendant's Brief of Omnibus Pre-Trial Motion, 5/2/18; Commonwealth's Response to Motion to Reconsider, 6/18/18. Based on the relevant procedural history of this case, and a review of the case law in this area, we find that the Commonwealth conceded Appellant's privacy interest in the Ford when it offered no rebuttal to Appellant's assertion of ownership despite the contrary registration. ***See*** ***Enimpah***, ***supra*** at 701.

Consequently, the trial court did not include any analysis or render a decision as to whether Appellant had established a reasonable expectation of

privacy in the automobile. *See* Findings of Fact and Conclusions of Law, 5/7/18. However, it did reach a conclusion regarding the legality of the search of the vehicle. Therefore, we can infer that the trial court implicitly found Appellant had established a privacy interest, since its analysis moved past this threshold question and directly into a discussion of the validity of the search. Under these circumstances, we find that Appellant has established standing and an expectation of privacy in the automobile and its contents. Therefore, we now proceed to consider collectively Appellant's three claims challenging the warrantless tow of his vehicle and the search that followed.

First, Appellant alleges that the warrantless tow of his vehicle from his grandmother's driveway to a parking garage was illegal, citing *Commonwealth v. Loughnane*, 173 A.3d 733 (Pa. 2017). In *Loughnane*, our Supreme Court held that the federal automobile exception to the warrant requirement does not apply to vehicles parked in private residential driveways. *Id*. at 745. Instead, our High Court found that "warrantless searches and/or seizures of an automobile [parked in a private residential driveway] must be supported by both probable cause and exigent circumstances." *Id*. at 744. Appellant argues that the Commonwealth failed to prove either component, and we agree.

Probable cause exists where "the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth*

*v. Martin*, 101 A.3d 706, 721 (Pa. 2014). When making a probable cause determination, we consider the totality of the circumstances from the vantage point of a "prudent, reasonable, cautious police officer on the scene at the time." *Id*. Again, "[o]ur standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa.Super. 2016).

Here, before the police towed the vehicle, they were aware that Appellant had engaged in multiple crack cocaine purchases with a CI from his residence. Detective Triana also knew that a previous search warrant executed at Appellant's brother's residence had yielded a large amount of crack cocaine and stolen firearms. The search warrant at Appellant's house uncovered marijuana, MDMA, and marked currency that were used in the controlled buys, but no crack cocaine or drug packaging materials.

The day of the search warrant's execution, police observed Appellant leave his residence with an opaque bag in hand. He made one stop on his way to meet with his probation officer, during which he approached the Ford parked in a private driveway, opened the trunk, and returned to his vehicle without the bag. The vehicle had three flat tires. The area surrounding the vehicle was searched by police for the bag, but nothing was recovered. When Appellant arrived at the courthouse, he was arrested and searched incident to

arrest. No crack cocaine was found on his person, and Appellant told police that they would not find any drugs in his home. He claimed ownership of the Ford, but refused to give any further information regarding the vehicle or the location of any drugs. Instead, he repeatedly asked the police to take him to the county jail. Based on his years of experience with Appellant, Appellant's family members, and other drug dealers in the area, and his interactions with Appellant that day, Detective Triana believed that Appellant deposited the bag in the trunk of the Ford and that it contained crack cocaine.

At the suppression hearing, the Commonwealth conceded that it did not have probable cause to believe that the Ford contained evidence of criminal activity before it towed the vehicle.[4] N.T. Omnibus Pre-Trial Hearing, 4/11/18, at 83. Appellant was not observed conducting drug sales from his Ford. Further, because the bag was opaque, the police could not be sure that Appellant placed drugs in the vehicle. As a result, we find that the Commonwealth did not have sufficient evidence of criminal activity connected

_____

[4] In light of Detective Triana's testimony about the inherent mobility of drugs and his experience with similarly situated suspects attempting to secret their drugs in locations away from their homes before meeting with their probation officers, one could argue that the probable cause determination was closer than the Commonwealth recognized. However, because the Commonwealth conceded this point, obviating the need for the defense to dispute the issue, we believe it would be fundamentally unfair to decide that there was probable cause. Further, accepting the concession as to probable cause, we do not reach the issue of exigent circumstances.

to the vehicle in order to justify its warrantless seizure. Thus, the tow was illegal.

Below, the Commonwealth did not dispute that the tow was illegal, but countered that the independent source doctrine applied and rendered the evidence admissible. The trial court agreed with this argument. Unfortunately, the Commonwealth and trial court have misconstrued the independent source doctrine.

By way of background, the exclusionary rule, bars the use of evidence at trial that was obtained through an unconstitutional search or seizure. However, evidence may be admissible if the connection between the unlawful conduct of the police and the discovery of the challenged evidence has become "so attenuated as to dissipate the taint." **Wong Sun v. United States**, 371 U.S. 471 (1963). Thus, if a "truly" independent source would have permitted the challenged evidence to be obtained through constitutional police action, it is possible that the evidence can be "purged" of the "taint" that resulted from the initial illegal police conduct so that it does not have to be excluded. **Commonwealth v. Henderson**, 47 A.3d 797, 799 (Pa. 2012) (citing **Commonwealth v. Melendez**, 676 A.2d 226 (Pa. 1996)). However, this limited exception does not apply to circumstances involving a knowing circumvention of an individual's constitutional rights through intentional police misconduct. **See**, **e.g.**, **Commonwealth v. Mason**, 637 A.2d 251, 253 (Pa. 1993) (balancing police misconduct and privacy interests in the context of the

independent source doctrine and explaining that it does not give police the authority to put a battering ram through the front door of a private dwelling without a warrant or exigent circumstances).

For example, in **Segura v. United States**, 468 U.S. 796 (1984), police illegally entered a private residence without a warrant. The entry was illegal because, although police had probable cause to search the residence, they did not also possess the necessary exigent circumstances. However, once inside, officers merely secured the residence until a search warrant was procured. Officers did not conduct any investigations or collect any evidence until the search warrant was issued. The evidence that formed the basis for the search warrant was derived entirely from sources uncovered prior to the illegal entry. Since the search warrant and the evidence upon which it was based were unrelated to the illegal entry, the Supreme Court found that the evidence recovered during the execution of the warrant was admissible through the independent source doctrine.

Based on the foregoing review of the independent source doctrine, it is clear that whether the Commonwealth can meet the criteria of the independent source doctrine depends on whether the evidence needed to form the basis for the warrant to search Appellant's Ford was obtained independently of the tow of the car. Appellant argues that the Commonwealth failed to meet this burden. He explains that since the canine sniff could not have been legally conducted on his grandmother's property, and the

Commonwealth has conceded that the canine sniff was essential in establishing probable cause for the search warrant of the car, the discovery of cocaine cannot be separated from the illegal tow of his vehicle. Appellant's brief at 25-26. We agree.

In Pennsylvania, we have held that canine sniffs are searches that invoke state and federal constitutional protection. ***Commonwealth v. Johnston***, 530 A.2d 74, 79 (Pa. 1987). However, because they are more limited searches conducted by human law enforcement officers, they do not need to be supported by probable cause. ***Id***. Instead, a canine sniff is validly performed if there was: (1) reasonable suspicion[5] to believe that drugs may be present in the place to be tested, and (2) lawful police presence in the place where the canine sniff is conducted. ***Id***. at 79.

Specifically, Appellant argues that the police could not have conducted the dog sniff on his grandmother's property because they were not lawfully present there. The Commonwealth confronted this argument for the first time in its response to Appellant's motion for reconsideration. However, the Commonwealth did not address whether police could lawfully conduct the dog sniff on the property. Rather, the Commonwealth maintained, for the first

---

[5] In order to establish reasonable suspicion, an officer "must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, [lead] him to reasonably conclude, in light of his experience, that criminal activity is afoot" and that the item to be searched was involved in that activity. ***Commonwealth v. Basinger***, 982 A.2d 121, 125 (Pa.Super. 2009).

time, that it did not matter whether they could legally conduct a dog sniff on the property because they could have done so from the public sidewalk that abutted the residence. However, the Commonwealth presented no evidence at the suppression hearing to support its bald assertion that such a sniff would have been possible, and the trial court did not address this argument in its opinion. Instead, the trial court held, based on **Williams**, that because the police were lawfully present where the dog sniff was ultimately conducted, the sniff was lawful. Trial Court Opinion, 10/19/18, at 13-14. The court's reasoning misses the mark for the reasons that follow.

An in-depth analysis of the facts in **Williams** is instructive. In **Williams**, the Erie police possessed probable cause to believe that the defendant was dealing drugs out of his vehicle and observed him driving his vehicle with a suspended license. They arrested him as he was exiting his vehicle, which he had just parked in his private residential driveway. Instead of securing a warrant for the vehicle, an officer drove the defendant's vehicle to the Erie police station so that a dog sniff could be conducted while they awaited issuance of a search warrant. Since **Loughnane** had not yet been decided, and its articulation of Pennsylvania's automobile exception was not yet the law, the defendant's argument centered on the fact that the police illegally entered his vehicle. **Id**. at 622. We found that although the entry into the vehicle was illegal, no evidence was uncovered as a result. The police had probable cause to search the car on the premises, and applied for a search

warrant based upon the probable cause established by the facts known before the vehicle was seized by police. Therefore, we held that evidence that was discovered pursuant to the search warrant was admissible through the independent source doctrine. As a result, the illegal seizure of the vehicle in *Williams* was excused, not approved.

Herein, in stark contrast to *Williams*, the police admittedly did not have probable cause to search or seize the car from the private driveway. Instead, the Commonwealth illegally towed the car to permit a dog sniff to take place where police were entitled to be, and used those results in order to obtain the search warrant. This distinction is critical, since it is the basis for distinguishing the *Williams* holding. Unlike in *Williams*, here the Commonwealth admitted that the police needed the positive results of the canine sniff in order to establish probable cause to obtain a search warrant. A review of the affidavit of probable cause confirms that the results of the dog sniff were included in the articulable facts contained in the Commonwealth's application for a warrant to search the vehicle. *See* Commonwealth Exhibit C, *supra* at 6. Thus, by illegally towing the vehicle, the Commonwealth placed itself in a better position than it would have been in without the misconduct.

Proper application of the independent source doctrine should never place the Commonwealth in a better position than it would have been in without engaging in illegal conduct. *Commonwealth v. Brundidge*, 620 A.2d 1115, 1119-20 (Pa. 1993). Simply put, the independent source rule

cannot apply here because the discovery of contraband was directly attributable to the illegal seizure of Appellant's vehicle. This vital distinction between the facts herein and those in **Williams** is fatal to the application of the independent source doctrine. **See, e.g., Murray v. United States**, 487 U.S. 533, 542 (1988) (holding that the independent source rule is not satisfied "if information obtained during that [illegal] entry was presented to the Magistrate and affected his decision to issue the warrant").

Further, it has not escaped our notice that, in response to defense questioning surrounding the decision to tow the vehicle to another location for purposes of a drug sniff, Detective Triana admitted that an officer involved in **Williams** discussed that case with him. Unfortunately, the police and the Commonwealth misconstrued our holding in **Williams** and, as a result, mistakenly relied upon it as providing license for a circumvention of a citizen's fundamental constitutional rights.

Under these circumstances, there was no independent source, unsullied by the taint of the Commonwealth's illegal conduct to legitimize the search and seizure of the contraband. The independent source doctrine is a narrow exception to the exclusionary rule. Our duty is to ensure that the fundamental privacy interests of individual citizens are not violated. **See Mason**, **supra** at 256 ("[O]ur task is not merely to deter police misconduct, but also to safeguard privacy[.]"). Accordingly, since the Commonwealth's illegal seizure of Appellant's vehicle is not vitiated by the independent source doctrine, we

are compelled to vacate the judgment of sentence, reverse the trial court's denial of Appellant's suppression motion, and remand for a new trial without the illegally obtained evidence.

Judgment of sentence vacated. Suppression order reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judge Musmanno joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2020