IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 28 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 2347 EDA |
| | : | 2019 dated September 25, 2020 |
| v. | : | Vacating the Order of the Lehigh |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-39-CR- |
| TIMOTHY OLIVER BARR II, | : | 0000279-2019 dated August 2, |
| | : | 2019 and Remanding. |
| Appellant | : | |
| | : | ARGUED: October 27, 2021 |

## OPINION

**CHIEF JUSTICE BAER**                     **DECIDED: December 29, 2021**

We granted allowance of appeal in this matter to examine to what extent, if at all, the smell of marijuana can be considered when determining whether law enforcement had probable cause to conduct a warrantless search of a vehicle. This issue arises in light of the General Assembly's enactment of the Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101-10231.2110, which legalized the possession and use of marijuana in limited circumstances, and this Court's recent decision in *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), which addressed whether police can stop and frisk a person merely based on the fact that the person possesses a concealed firearm in public. Like the Superior Court, we hold that the smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle. However, we

respectfully disagree with the Superior Court's decision to remand the matter to the trial court for reconsideration of its order granting the motion to suppress filed by Timothy Barr, II ("Appellant"). Instead, for the reasons that follow, we vacate the Superior Court's judgment, reinstate the trial court's order which granted Appellant's motion to suppress, and remand for further proceedings that are consistent with this opinion.

## I. Background

As a result of a vehicle search that we describe in more detail *infra*, the Commonwealth discovered a bag of marijuana and a firearm. In connection with these items, the Commonwealth charged Appellant with persons not to possess a firearm, possession of a firearm without a license, and possession of a small amount of marijuana. Appellant subsequently filed an omnibus pretrial motion, which included a motion to suppress the physical evidence gathered by police during the search, and a petition for a writ of *habeas corpus*, contending that the Commonwealth could not establish a *prima facie* case that Appellant possessed a small amount of marijuana or committed the firearm offenses. Following a hearing, the trial court granted the motion to suppress and granted in part the petition for a writ of *habeas corpus*, dismissing the count of possession of a small amount of marijuana. The court authored an opinion in support of that order, which included findings of fact and conclusions of law. Trial Court Opinion, 8/2/2019. We glean the following summary from the trial court's findings of fact.

In the early morning hours of November 7, 2018, Pennsylvania State Trooper Edward Prentice was mentoring or "coaching" newly-hired State Trooper Danielle Heimbach. The troopers were on routine patrol in a marked police vehicle on Emaus Avenue in the area of the Liberty Park at Allentown apartment complex in Allentown, Pennsylvania, when, at approximately 12:30 a.m., Trooper Prentice observed a vehicle make a U-turn on Allenbrook Drive and then proceed east on Emaus Avenue. Despite

the fact that the troopers did not observe any criminal activity, Trooper Prentice decided to follow the vehicle because no other cars were around, the vehicle appeared to be traveling at a fast rate of speed, and it was past midnight.

As the troopers followed the vehicle, it made a left-hand turn onto Devonshire Road/Mack Boulevard. The vehicle was driving at a high rate of speed but eventually slowed down as it approached an overpass on which vehicles must pass in opposite directions, one vehicle at a time. Troopers Prentice and Heimbach observed that the vehicle failed to stop at the solid white stop line on the road at the stop sign that controls the single lane overpass, causing the troopers to initiate a stop for this alleged Vehicle Code violation. The vehicle pulled over as soon as the troopers engaged it.

Because Trooper Prentice was coaching Trooper Heimbach, Trooper Heimbach took the lead of investigating the matter further by approaching the passenger side of the vehicle. As the trooper got closer to the occupants of the vehicle, she smelled burnt marijuana. Appellant's wife, Teri Barr ("Barr"), was driving the vehicle, Appellant was in the front passenger seat, and Luis Monteiro ("Monteiro") was in the rear passenger seat, where he was observed drifting in and out of sleep.

Soon thereafter, Trooper Prentice approached the vehicle on its driver's side. As the trooper began to arrive at the driver's window, he smelled the odor of burnt marijuana through the open window of the vehicle.[1] Trooper Prentice then asked Barr to exit the vehicle so that he could interview her and confirm that she was not unlawfully under the influence of marijuana. At that point, Appellant began to argue with Trooper Heimbach by repeatedly exclaiming that "no one is getting out of this fucking vehicle." Backup

---

[1] At the suppression hearing, Trooper Prentice testified that he smelled both burnt and raw marijuana. However, the trial court found incredible his testimony that he smelled raw marijuana.

officers from the Allentown Police Department soon arrived at the scene, causing Appellant to become more cooperative.

Trooper Prentice then advised the occupants of the vehicle that, because he smelled marijuana, he could search the vehicle pursuant to this Court's decision in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (plurality) (holding that the federal automobile exception to the warrant requirement of the Fourth Amendment applies in Pennsylvania), *overruled by Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) (holding that Article I , Section 8 of the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile). Appellant and Barr presented Trooper Prentice with medical marijuana identification cards that permitted them to possess and consume medical marijuana pursuant to the MMA.

Notably, at the time of the stop, Trooper Prentice was aware that green, leafy marijuana was legal for medical purposes, but he was unsure how a patient was permitted to ingest this product for medical purposes. In addition, Trooper Prentice believed that no smell is produced when a patient utilizes a vaping pen to inhale medical marijuana. Trooper Heimbach was unaware that green, leafy marijuana was legal for medical purposes. She too was unsure how medical marijuana was ingested.

Nonetheless, at that point, the troopers conducted a search of the vehicle which allegedly was supported by probable cause based on the smell of marijuana. During that search, the troopers observed non-prosecutorial amounts of marijuana "shake," *i.e.*, small flakes of marijuana leaf, on the vehicle's floor. Trooper Heimbach also discovered a Ziploc bag that contained 0.79 grams of marijuana. She found that bag between the front

passenger seat and the center console.  The Ziploc plastic bag did not have any markings or barcodes that would identify it as medical marijuana purchased at a dispensary.[2]

As part of the probable cause examination, Trooper Prentice searched the rear of the vehicle, where he discovered a jacket that was rolled up into a ball and that stuck out halfway under the driver's seat.  Inside of the jacket, the trooper found a handgun with one bullet in the chamber and four bullets in the magazine.  Trooper Prentice suspected that it was Appellant's jacket and advised his fellow officers to detain all three occupants of the vehicle.  A subsequent search of the vehicle's trunk uncovered an Apple logo baggie that contained unused clear plastic baggies that were consistent with both general packaging for drug distribution and the particular baggie that contained the marijuana that Trooper Heimbach found between the front passenger seat and the center console.

At the suppression hearing, Appellant presented the testimony of David Gordon, M.D., a retired heart and lung surgeon and an expert in medical marijuana in Pennsylvania.  Dr. Gordon sees patients to determine whether they are appropriate candidates for medical marijuana cards.  In fact, he was the physician that recommended that Appellant met the qualifications to receive the medical marijuana card that he presented to the troopers before they searched the vehicle on the night in question.

During his testimony, Dr. Gordon explained to the trial court that there is no difference between green, leafy medical marijuana and marijuana purchased illegally on the streets.  The doctor noted that smoking marijuana is illegal under the MMA; however, he also informed the court that green, leafy marijuana can be consumed legally by way of a vaping pen.  Dr. Gordon stated that vaping marijuana produces an odor and that there is no difference between the odor of legally vaped and illegally smoked marijuana.

---

[2] During the suppression hearing, Appellant produced a receipt from a medical marijuana dispensary for the purchase of $85 worth of medical flower marijuana from a dispensary. The receipt was dated November 2, 2018, *i.e.*, five days before the stop.

Regarding the packaging of medical marijuana, Dr. Gordon explained that it can be sold in a plastic container like a pill bottle with a plastic bag in it that contains the medical marijuana. Dr. Gordon shared his belief that the inner bag contains markings that indicate that it was purchased at a medical marijuana dispensary, but he was not certain. According to Dr. Gordon, at the time of the hearing, there were more than 143,000 patients in Pennsylvania who could legally obtain, possess, and ingest medical marijuana. He further suggested that there is a clear disconnect between the medical and the law enforcement communities with respect to the legalization of medical marijuana.

Based upon these findings of fact, the trial court concluded as a matter of law that the troopers lacked probable cause to search the vehicle and, therefore, that the search was unconstitutional. Consequently, the court held that the evidence seized during that search must be suppressed. In addition, the court dismissed the charge of possession of a small amount of marijuana based upon its determination that the Commonwealth failed to establish a *prima facie* case in support of that charge. After presenting these findings of fact and conclusions of law, the court offered a recitation of the rationale it employed in reaching these results.

In this regard, the trial court stated that it found guidance from this Court's recent decision in *Hicks*, *supra*. According to the court, *Hicks* held that a police officer may not infer criminal activity merely from an individual's possession of a concealed firearm in public because a firearm may lawfully be carried and, thus, possession alone does not suggest criminal activity. The court opined that the reasoning in *Hicks* extends to the instant matter because "the 'plain smell' of marijuana alone no longer provides authorities with probable cause to conduct a search of a subject vehicle" because the drug has been legalized in Pennsylvania for medical purposes. Trial Court Opinion, 8/2/2019, at 14-15.

In other words, the court explained, "the plain smell of burnt or raw marijuana is no longer indicative of an illegal or criminal act." *Id.* at 15.

The trial court then stated that, here, the troopers conducted a search of a vehicle based solely on the odor of marijuana emanating from that vehicle.[3] Yet, the court explained, "as in *Hicks* where the defendant possessed a valid license to carry a concealed firearm, [Appellant] has a valid license to possess and ingest medical marijuana." *Id.* The court highlighted various portions of Dr. Gordon's testimony, including his observation that "there is no difference in odor of ingesting the medical marijuana when utilizing a vaping pen and the odor of smoking regular marijuana from an unlawful source." *Id.* The court submitted that it "is illogical, impractical, and unreasonable for Trooper Prentice and Trooper Heimbach to have concluded that there was criminal activity afoot when [Appellant] was able to present them with a valid medical marijuana card which permitted him to possess and ingest marijuana." *Id.*

The trial court reiterated its view that the smell of marijuana is no longer *per se* indicative of a crime. According to the court, with "a valid license an individual is permitted, and expected, to leave an odor of marijuana emanating from his or her person, clothes, hair, breath, and therefore, his or her vehicle." *Id.* The court shared its opinion that there is a disconnect between the medical and law enforcement communities, as the General Assembly "did not contemplate that people with legal medical marijuana cards would be arrested and prosecuted for possession of marijuana in a package that is not clearly marked with a dispensary name on it." *Id.* at 15-16. For these reasons, the trial court directed that all evidence seized from the vehicle was illegally obtained and should

---

[3] In making this statement, the court noted that the record reflects that the troopers' education related to marijuana was limited to walking past a controlled marijuana burn for a few seconds. *Id*. at 15-16 n.19. The court further concluded that the "troopers lacked knowledge about the specifics of legal/medical marijuana and its usage." *Id.*

be suppressed. The Commonwealth appealed the trial court's order to the Superior Court, certifying that an appeal is appropriate because the trial court's order terminates or substantially handicaps the prosecution. Pa.R.A.P. 311(d).

## II. Superior Court Opinion

In a lengthy published opinion, a three-judge panel of the Superior Court agreed with the trial court that the odor of marijuana does not *per se* establish probable cause to allow police officers to conduct a warrantless search of a vehicle. *Commonwealth v. Barr*, 240 A.3d 1263 (Pa. Super. 2020). The Superior Court noted that the Commonwealth presented a multipart argument that the trial court erred by concluding that the troopers lacked probable cause to conduct a warrantless search of the vehicle in which they found Appellant.

In summarizing the various principles of law that govern review of this claim, the Superior Court explained the automobile exception to the warrant requirement, which, according to the court, "permits the search and/or seizure of a motor vehicle if supported by probable cause—no separate finding of exigent circumstances is required."[4] *Id.* at 1274 (quoting *Commonwealth v. Loughnane*, 173 A.3d 733, 741 (Pa. 2017)). The court stated that this exception applies if the police possess probable cause to believe that a search of a vehicle will uncover evidence of a crime. The court further explained, "In determining whether probable cause exists, we apply a totality of the circumstances test. . . . Probable cause is a practical, nontechnical conception: it is a fluid concept - turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (citations and internal quotation marks omitted).

---

[4] As we explain *infra*, the automobile exception to the warrant requirement no longer exists in Pennsylvania.

Next, the Superior Court provided an overview of the Commonwealth's various arguments, namely that: (1) it is well-settled that the odor of marijuana is sufficient to create probable cause to conduct a search; (2) this rule has not been altered by the MMA or this Court's decision in *Hicks*; and (3) assuming *arguendo* that the odor of marijuana alone does not establish probable cause to search, that odor is nonetheless a relevant factor that may contribute to a finding of probable cause - yet, the trial court afforded no weight to that factor. As to the Commonwealth's first contention, the court closely examined prior precedent, concluding that, "contrary to the Commonwealth's claim, there is no preexisting, *per se* rule that the odor of marijuana is **always** sufficient to establish probable cause to believe a crime is being committed. Rather, the existing rule, properly stated, is that the odor of marijuana **may** alone be sufficient to establish probable cause to search in particular factual contexts." *Id.* at 1276 (emphasis in original). The court then discussed the interplay between the MMA and the Controlled Substance, Drug, Device, and Cosmetic Act ("CSA"), 35 P.S. §§ 780.101-780.144.

In so doing, the Superior Court opined, *inter alia*, that "the plain smell doctrine is a specific application of the totality-of-the-circumstances test for probable cause, crafted in light of the previously universal fact of marijuana's illegality and its distinctive odor." *Id.* at 1278. The court, however, observed that the passage of the MMA altered the premise underlying this principle. The court conceded that marijuana remains a prohibited substance under the CSA, regardless of the enactment of the MMA. However, echoing the trial court's observations, the Superior Court insisted that "the strength of the inference of illegality stemming from the odor of marijuana has necessarily been diminished by the MMA in Pennsylvania." *Id.* After the Superior Court explained its prior precedent concerning the "plain smell" doctrine, it concluded "that the trial court did not err in merely considering the passage of the MMA as a relevant fact in its probable cause analysis."

*Id.* at 1283.  According to the court, the only question that remained was "whether the lower court abused its discretion in concluding that the odor of marijuana cannot contribute to a finding of probable cause in the post-MMA environment."[5]  *Id.*

In answering this question, the Superior Court addressed this Court's decision in *Hicks.*  According to the Superior Court, *Hicks* held that "possession of a concealed firearm by an individual in public is not sufficient to create a reasonable suspicion that the individual may be dangerous or committing a criminal offense[.]"  *Id.*  The court agreed with the Commonwealth that the trial court erred by finding that the reasoning in *Hicks* was directly applicable to this case.  "First," the court noted, "the holding in *Hicks* could not directly apply because it concerned what constitutes reasonable suspicion of criminality justifying a *Terry*[6] stop when possession of a concealed firearm is observed, not whether probable cause to search a vehicle exists based on the odor of marijuana alone."  *Id.* at 1285.  Additionally, the Superior Court stated its belief that the conduct at issue here, possession of marijuana, is not analogous to the conduct at issue in *Hicks*, possession of a firearm.  According to the court, "[t]he possession of a firearm is generally legal, with limited exceptions.  The possession of marijuana, by contrast, remains generally illegal, but for the limited exception of lawful possession of medical marijuana pursuant to the MMA."  *Id.*

Despite these observations, the Superior Court took some guidance from *Hicks.*  In this regard, the court explained that "the *Hicks* decision was not premised solely on the general legality of firearms."  *Id.* at 1286.  The court opined, "It remains a fact that police

---

[5] As discussed in more detail *infra*, a close reading of the trial court's opinion reveals that it did not, in fact, conclude that the odor of marijuana cannot contribute to a finding of probable cause given the enactment of the MMA.  The court simply determined that the smell of marijuana alone cannot establish probable cause to search a vehicle.

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

cannot distinguish between contraband marijuana and medical marijuana legally consumed by a substantial number of Pennsylvanians based on odor alone, just as police cannot determine from a person's possession of a concealed firearm that he or she is unlicensed to carry it concealed." *Id.* In addition, the court rejected the Commonwealth's position that the MMA acts as an affirmative defense to marijuana violations, as the Legislature expressed no such intent in the MMA.

Next, the Superior Court noted that Fourth Amendment precedent requires the presence of individualized suspicion to justify otherwise constitutionally protected searches and seizures of a person. *Id.* at 1287. Again relying upon *Hicks*, the court observed that many Pennsylvania citizens can legally possess and consume marijuana under the MMA. Thus, the court submitted, "The odor of marijuana alone, absent any other circumstances, cannot provide individualized suspicion of criminal activity when hundreds of thousands of Pennsylvanians can lawfully produce that odor." *Id.*

However, according to the court, the smell of marijuana provides police with "probabilistic suspicion of criminal activity based on the fact that most citizens cannot legally consume marijuana." *Id.* In other words, the smell of marijuana can be a factor in providing police with probable cause to search a particular place. The Superior Court concluded that the trial court failed to appreciate this nuance, as it allegedly "afforded the odor of marijuana no weight in its determination that police lacked probable cause to search [Appellant's] vehicle." *Id.* At this point, the Superior Court outlined the Commonwealth's argument that the trial court did not adequately consider several other potential factors that could have supported a finding of probable cause to search the vehicle in which the troopers found Appellant.

Specifically, the Commonwealth argued that the trial court did not appropriately consider or weigh the following factors in conducting its probable cause analysis: (1)

Trooper Prentice's training and experience in narcotics investigations; (2) the fact that Trooper Prentice identified the area where the troopers stopped the vehicle as a high crime area; and (3) Appellant's statements and demeanor throughout the stop. As to these alleged factors, the Superior Court ultimately concluded that the trial court "failed to provide . . . discrete credibility assessments relevant to the other potential factors affecting probable cause in its opinion." *Id.* at 1288. To illustrate, the Superior Court suggested that the trial court did not assess whether the vehicle stop occurred in a high crime area or analyze Appellant's demeanor during the stop. Consequently, the Superior Court concluded that it should vacate the trial court's order which granted Appellant's motion to suppress and remand the matter to the trial court for reconsideration of its suppression ruling.

The Superior Court dedicated the remainder of its opinion to addressing the Commonwealth's contention that the trial court erred by granting Appellant's petition for a writ of *habeas corpus* and dismissing the charge of possession of a small amount of marijuana, a claim that is not at issue in this appeal. The Superior Court held that, given its disposition of the Commonwealth's first issue, the portion of the trial court's order granting Appellant habeas relief also should be vacated and reconsidered, following the trial court's disposition of Appellant's suppression issue.

The late Honorable Eugene Strassburger, III, penned a brief but thoughtful concurring opinion. Judge Strassburger joined the Majority Opinion in its entirety. He wrote "separately to note [his] discontent with the Commonwealth's reliance on the 'high-crime area' factor in support of a finding of probable cause." *Id.* at 1291 (Strassburger, J., concurring). Judge Strassburger expressed his view that "the status of the neighborhood at issue as a 'high-crime area' should not be relevant to the probable cause determination." *Id.* In his opinion, "[p]eople who live in poor areas that are riddled with

crime do not have fewer constitutional rights than people who have the means to live in 'nice' neighborhoods." *Id.* The two other judges on the panel joined Judge Strassburger's Concurring Opinion.

### III. Allowance of Appeal

Appellant petitioned this Court for allowance of appeal, which was granted, limited to the following issues:

> (1) What weight, if any, should the odor of marijuana be given in determining whether probable cause exists for a warrantless vehicle search, in light of the enactment of the Medical Marijuana Act, 35 P.S. § 10231.101 *et seq.*?

> (2) To what extent does this Court's decision in *Commonwealth v. Hicks*, 652 Pa. 353, 208 A.3d 916 (2019), apply to probable cause determinations involving the possession of marijuana following the enactment of the Medical Marijuana Act, 35 P.S. § 10231.101 *et seq.*?

*Commonwealth v. Barr*, 252 A.3d 1086, 1087 (Pa. 2021).[7]

### IV. Parties' Arguments

#### A. Appellant's Argument[8]

Appellant first contends that the trial court was correct in holding that the troopers who searched his vehicle erroneously relied upon the smell of marijuana to establish probable cause. He posits that the "plain smell" doctrine as it relates to marijuana rests upon two grounds: (1) the *per se* illegality of marijuana; and (2) the purported ability of law enforcement to detect readily the substance's unique aroma. Appellant's Brief at 21 (citing *Commonwealth v Stainbrook*, 471 A.2d 1223, 1225 (Pa. Super. 1984) (providing

---

[7] These issues are inextricably intertwined; thus, we will address them and the parties' arguments together. We further note that the overarching issue in this case requires consideration of how the smell of marijuana impacts whether police have probable cause to conduct a warrantless search of a vehicle. "This issue [] presents a question of law; thus, our scope of review is plenary, and our standard of review is *de novo.*" *Commonwealth v. Hill*, 238 A.3d 399, 409-10 (Pa. 2020).

[8] The Defender Association of Philadelphia and the American Civil Liberties Union jointly filed an *amicus* brief in support of Appellant.

that the plain smell of marijuana alone establishes probable cause due to marijuana's distinctive odor and its status as an illegal drug)).

These two grounds, Appellant submits, were eliminated in 2016 when the General Assembly enacted the MMA. After passage of the Act, he argues, marijuana is no longer *per se* illegal. He further asserts that the expert testimony of Dr. Gordon, which the trial court credited at the suppression hearing, establishes that there is no discernable difference between the appearance or odor of lawful medical marijuana and that of illegal marijuana; the chemical composition of both types of marijuana are the same. Appellant further maintains that the record supports the trial court's findings that: (1) he was licensed to possess and use medical marijuana at the time of the vehicle search and his arrest, Trial Court Opinion, 8/2/2019, at 5; (2) he provided that license to the troopers prior to the search, *id.*; (3) Trooper Prentice was unfamiliar with how a person ingests green, leafy medical marijuana and mistakenly believed that the ingestion of medical marijuana by vape pen created no odor, *id.*; and (4) Trooper Heimbach was unaware of how medical marijuana was ingested and believed mistakenly that green, leafy marijuana was illegal and not utilized for medicinal purposes, *id.*

Appellant acknowledges that the "determination of whether probable cause exists to support a warrantless search or seizure is based on an evaluation of the totality of the circumstances observed by the officer when making the arrest." Appellant's Brief at 19 (citing *Commonwealth v. Banks*, 658 A.2d 752 (Pa. 1995)). Nevertheless, Appellant posits, in the post-MMA era, the smell of marijuana cannot establish an individualized suspicion of criminal activity. Thus, he maintains, the odor of marijuana should be given no weight at all in determining whether probable cause exists to conduct a warrantless vehicle search.

In this regard, Appellant challenges specific passages of the Superior Court's opinion referencing the general illegality of marijuana. Appellant's Brief at 31 (citing *Barr*, 240 A.3d at 1287 (providing that the smell of marijuana may provide to police "a general, probabilistic suspicion of criminal activity based on the fact that most citizens cannot legally consume marijuana")). This "general, probabilistic suspicion of criminal activity," Appellant contends, is unsupportable, as is the Superior Court's reasoning that because most people are not licensed to smoke marijuana, the odor of marijuana is probably deriving from someone unlicensed under the MMA. Appellant's Brief at 33 (citing *Barr*, 240 A.3d at 1287 (holding that "[t]he general illegality of marijuana under the CSA cannot simply be ignored merely because it is lawfully used in limited circumstances under the MMA and, thus, we must reject the trial court's conclusion that the odor of marijuana provides no indication of criminal activity")). Appellant submits that the Superior Court's analysis in this regard is the antithesis of particularized suspicion that is required to establish probable cause to justify a search or seizure under the Fourth Amendment.

Moreover, contrary to the Superior Court's determination, Appellant avers that the warrantless search of the vehicle was based exclusively on the odor of marijuana emanating from it. Appellant's Brief at 27-29 (citing N.T., 7/17/2019, at 69-70 (answering in the affirmative when Trooper Prentice was asked whether he explained to the vehicle's occupants that the odor of marijuana provided probable cause to search the vehicle), *id.* at 71-72 (answering in the affirmative when Trooper Prentice was asked whether he searched the car "based upon the burnt smell of marijuana in that car"), *id.* at 128-29 (providing that Trooper Heimbach searched the vehicle because she detected the odor of burnt marijuana). Absent any additional factors suggesting probable cause that criminal activity was occurring, Appellant maintains that the search of the vehicle in which he was riding was constitutionally unsupportable.

Lastly, Appellant contends, this Court's decision in *Hicks* governs the instant appeal, as it stands for the proposition that where the possession of an item is lawful due to the grant of a license to possess it, that possession is not suggestive of criminal activity and, thus, cannot contribute to a finding of probable cause. Stated differently, Appellant argues that *Hicks* affords him constitutional protection from a search and seizure based exclusively upon his lawful engagement in a commonly licensed activity. Recognizing that the licensed activity in the two cases differ (lawful marijuana possession or use in this case, as opposed to lawful concealment of a firearm in *Hicks*), Appellant submits that the legal analysis remains the same.

In Appellant's view, this Court in *Hicks* contemplated the application of its holding to other licensed activities. Appellant's Brief at 57 (citing *Hicks*, 280 A.3d at 944-45 (stating that "[i]f the consequence of our decision is that future courts afford meaningful Fourth Amendment protection to individuals engaged in other commonly licensed activities, that result is preferable to our allowance of governmental overreach that undermines the individual freedom that is essential to our way of life in this constitutional republic")). He posits that the Superior Court ignored this sentiment when it distinguished *Hicks* based upon an inappropriate "inference of illegality" arising from the possession or use of marijuana in the post-MMA world. Appellant relies upon the affirmation in *Hicks* that "individualized suspicion of wrongdoing remains essential under the Fourth Amendment," *Hicks*, 208 A.3d at 938, and finds that the Superior Court's "general probabilistic suspicion" precept is irreconcilable with that mandate.[9]

---

[9] Further, Appellant finds unpersuasive the intermediate court's attempt to distinguish *Hicks* based on its factual premise involving a *Terry* stop, as opposed to a warrantless search of a vehicle as occurred here, because a warrantless search requires satisfaction of a more stringent standard (probable cause) than that required for an investigative detention (reasonable suspicion).

**B. Commonwealth's Argument**[10]

In response, the Commonwealth disputes Appellant's contention that the enactment of the MMA eliminated the smell of marijuana as an appropriate factor to consider when determining whether probable cause exists. It emphasizes the Superior Court's conclusion that the "MAA did not legalize marijuana nor did it render possession or use of marijuana presumptively legal." Commonwealth's Brief at 12 (quoting *Barr*, 243 A.3d at 1285-86). Instead, the Commonwealth maintains, the MMA simply "provides a very limited and controlled vehicle for the legal use of medical marijuana by persons qualified under the MAA." Commonwealth's Brief at 13 (citing *Commonwealth v. Jezzi,* 208 A.3d 1105, 1115 (Pa. Super. 2019)).

The Commonwealth cites the MMA's strict guidelines for the lawful purchase, possession, and use of marijuana, as reflected in 35 P.S. § 10231.303, and its enumeration of unlawful activities relating to medical marijuana, as provided in 35 P.S. § 10231.304(b). Moreover, it contends, enactment of the MMA did not abrogate the CSA, which identifies marijuana as a prohibited substance at 35 P.S. § 780-104(1)(iv). Finally, the Commonwealth emphasizes that, while legal, medical marijuana can impair driving, and the MMA did not alter the Motor Vehicle Code's prohibition on driving under the influence of controlled substances, including marijuana. Commonwealth's Brief at 13 (citing 75 Pa.C.S. § 3802(d)(1)(i) (providing that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle" where the individual's blood contains any amount of a "Schedule I controlled substance," as defined in the CSA).

Accordingly, the Commonwealth posits, the MMA did not alter the well-settled totality of the circumstances test utilized to establish probable cause. Commonwealth's

---

[10] The Pennsylvania District Attorneys Association filed an *amicus* brief in support of the Commonwealth.

Brief at 6 (citing *Illinois v. Gates*, 462 U.S. 213 (1983) (establishing the totality of the circumstances test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause)). It submits that the Superior Court properly concluded that, while the smell of marijuana alone cannot, in and of itself, establish probable cause to support a search in the post-MMA era, the odor of marijuana is a relevant factor to consider when examining the totality of the circumstances.

In applying the totality-of-the-circumstances test, the Commonwealth argues, police officers should be permitted to consider all relevant factors including, *inter alia*, the smell of marijuana, the presentation of a card indicating MMA qualification, and the implication of statements or behavior of the suspect. *See* Commonwealth's Brief at 14 (citing *Maryland v. Pringle*, 540 U.S. 366, 372 (2003) (requiring a reviewing court, when determining the existence of probable cause: (1) to consider the whole picture, as opposed to evaluating each fact in isolation; and (2) not to dismiss outright any circumstances that may be susceptible of innocent explanation)). In the Commonwealth's view, this totality of the circumstances includes factors which may arguably be innocent in nature. *Id.* at 16-17 (citing *Gates*, 462 U.S. at 243 n.13 (providing that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts")). Further, it maintains, police officers must be permitted to employ their experience, common sense, and observations of all the factors before them to determine whether explanations given by the suspect for certain behavior are credible. *Id.* at 17.

Additionally, the Commonwealth contends that the Superior Court properly determined that *Hicks* does not govern this appeal, notwithstanding the General Assembly's enactment of the MMA. It submits that *Hicks* did not alter the test for probable cause or render the smell of marijuana irrelevant in an analysis of the totality of the

circumstances. Rather, the Commonwealth posits, *Hicks* merely held that carrying a concealed weapon in public, in and of itself, does not establish reasonable suspicion to stop and seize a person. Notably, it argues, *Hicks* expressly instructed that its holding "is confined to the lawfulness of seizures based solely upon the possession of a concealed firearm – conduct that is widely licensed and lawfully practiced by a broad range of people." Commonwealth's Brief at 22-23 (citing *Hicks*, 208 A.3d at 945).

The Commonwealth submits that possession of marijuana is not akin to possession of a concealed weapon because the CSA prohibits the possession or use of marijuana, and the MMA did not abrogate that statute. Rather, it reiterates that the MMA merely carved out a limited exception to the general rule that marijuana is illegal. The Commonwealth suggests that the Superior Court correctly concluded that unlike firearms, marijuana remains presumptively illegal in Pennsylvania. Thus, the Commonwealth asserts, "the odor of marijuana has not lost its 'incriminating' smell by virtue of its legality for some, because it in fact remains illegal for the vast majority of Pennsylvania residents." Commonwealth's Brief at 24.

Finally, while not asserting expressly that the Superior Court erred in remanding the matter to the trial court to reconsider the totality of the circumstances, the Commonwealth argues that the search in this case was supported by probable cause. In support of this proposition, it asserts that: (1) Trooper Prentice had been an officer for ten years, had investigated marijuana crimes, and was trained to identify the smell of marijuana; (2) Trooper Prentice was familiar with the "corridor" where the stop occurred, as he had investigated purported drug deals and claims of stolen firearms in that area; (3) Trooper Prentice observed the vehicle in which Appellant was a passenger commit a traffic violation and lawfully stopped the vehicle, after which he detected the odor of burnt marijuana emanating from the vehicle's open window; (4) Appellant became

argumentative when the occupants of the vehicle were directed to exit the car and informed Officer Heimbach that they were not getting out of the car; and (5) based on his training, Officer Prentice believed that Appellant's statements and conduct suggested that criminal activity was afoot.

## V. Analysis

We begin by highlighting the general principles of law that govern these circumstances. We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017). "We are bound by the suppression court's factual findings so long as they are supported by the record." *Id.* "In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the [defendant's] witnesses along with the Commonwealth's evidence which remains uncontroverted." *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010). Our scope of review of suppression court factual findings is limited to the suppression hearing record. *Yandamuri*, 159 A.3d at 516. We, however, are not bound by a suppression court's conclusions of law; "rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary." *Hicks*, 208 A.3d at 925 (quoting *Commonwealth v. Wilmer*, 194 A.3d 564, 567 (Pa. 2018)).

Turning to the substantive law at issue, we observe that "[b]oth the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures by police in areas where individuals have a reasonable expectation of privacy."[11] *Commonwealth v.*

---

[11] The Fourth Amendment of the United States Constitution provides as follows:

*Loughnane*, 173 A.3d 733, 741 (Pa. 2017).  If a person has a reasonable expectation of privacy in a place, then these constitutional provisions generally require police to obtain a warrant to search the place; a search warrant must be supported by probable cause and issued by a neutral, detached magistrate.  *Id.*  Warrantless searches are presumptively unreasonable under the state and federal constitutions.  *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007).

"Probable cause" is a practical, non-technical concept.  *Commonwealth v. Coleman*, 830 A.2d 554, 560 (Pa. 2003).  To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the totality-of-the-circumstances" test.  *Commonwealth v. Jones*, 988 A.2d 649, 655-56 (Pa. 2010).  Pursuant to that test, when presented with an application for a warrant, "[a] magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Commonwealth v. Jones*, 668 A.2d 114, 116-17 (Pa. 1995) (citation and some internal quotation marks omitted).

---

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST., amend. IV.

Article I, Section 8 of the Pennsylvania Constitution states:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST., art. I, § 8.

There, however, are exceptions to the general warrant requirement. For example, the police may conduct a warrantless search of a home if they have probable cause to believe that contraband or evidence of a crime will be found in the home and exigent circumstances are present. *See Commonwealth v. Roland*, 637 A.2d 269, 270 (Pa. 1994) ("Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment."). Another exception, which is relevant here but is no longer part of Pennsylvania jurisprudence, is the federal automobile exception. This exception allowed police at the time the incident occurred to conduct a warrantless search or seizure of an automobile so long as it is supported by probable cause, and no separate finding of exigent circumstances was required.[12] *Loughnane*, 173 A.3d at 741.

Under these circumstances, "police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007) (quoting *Commonwealth v. Rogers*, 849 A.2d 1185, 1192 (Pa. 2004)). Whether police had probable cause to conduct a warrantless search also is evaluated under a traditional totality-of-the-circumstances test. *Id.*

Concerning the law as it pertains to marijuana, it is indisputable that, prior to the enactment of the MMA, the CSA rendered marijuana *per se* illegal, *inter alia*, to possess.

---

[12] At the time of the vehicular search at issue in this case, this Court's plurality decision in *Gary*, *supra*, which adopted the automobile exception for purposes of the Pennsylvania Constitution, was considered to control the law in this area. However, since that time, this Court decided *Alexander*, *supra*, which held that Article I, Section 8 of the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile. Because this matter is resolved based upon a lack of probable cause, we need not address the application of *Alexander* or whether the circumstances demonstrate exigency.

*See, e.g.*, 35 P.S. § 780-113(a)(31) (rendering it illegal for persons to possess small amounts of marijuana). Due to the illegal nature of marijuana and because of its distinct odor, the Superior Court often has employed the so-called "plain smell" doctrine when called upon to discern whether police had probable cause to conduct a warrantless search of a vehicle. Stated succinctly, that doctrine provides that, if a police officer smells marijuana in a place where the officer is justified to be, then the odor of marijuana alone may be sufficient to establish probable cause to conduct a search. *Commonwealth v. Stainbrook*, 471 A.2d 1223, 1225 (Pa. Super. 1984) (explaining the plain smell doctrine); *see also In Interest of A.A.*, 195 A.3d 896, 904 (Pa. 2018) (stating that "the odor of marijuana alone, particularly in a moving vehicle, is sufficient to support at least reasonable suspicion, if not the more stringent requirement of probable cause").

To the extent that the "plain smell" doctrine would allow the smell of marijuana alone to establish probable cause to conduct a warrantless search of a vehicle, we agree with Appellant that the enactment of the MMA in 2016 undermined the rationale that could justify such a result. In passing the MMA, the General Assembly stated its intent to "[p]rovide a program of access to medical marijuana which balances the need of patients to have access to the latest treatments with the need to promote patient safety" and to "[p]rovide a safe and effective method of delivery of medical marijuana to patients." 35 P.S. § 10231.102(3)(i) and (ii). Pursuant to the MMA, if a patient receives certification from a practitioner and possesses a valid identification card from the Commonwealth's Department of Health, then that patient can possess and consume medical marijuana in a manner that is consistent with the MMA. *See, e.g.*, 35 P.S. § 10231.303(b)(1)(i) (stating that medical marijuana may be dispensed to "a patient who receives a certification from a practitioner and is in possession of a valid identification card issued by the department").

Notably, there is no dispute that dry leaf or plant medical marijuana is available to certified patients and can be consumed by way of vaporization.[13] We further observe that the MMA clearly states that, to the extent that the Act conflicts with the CSA, the MMA "shall take precedence." 35 P.S. § 10231.2101. "In other words," as the Superior Court astutely stated, "compliance with the MMA will not constitute a crime under the CSA." *Barr*, 240 A.3d at 1278.

We conclude that the MMA makes abundantly clear that marijuana no longer is *per se* illegal in this Commonwealth. Accordingly, the enactment of the MMA eliminated this main pillar supporting the "plain smell" doctrine as applied to the possession or use of marijuana. Indeed, so long as a patient complies with the dictates of the MMA, that person can legally possess and consume various forms of medical marijuana, including the plant itself. Accordingly, the smell of marijuana alone cannot create probable cause to justify a search under the state and federal constitutions.

Yet, as the Superior Court highlighted, despite the enactment of the MMA, the CSA still renders possession of marijuana illegal for those not qualified under the MMA. Thus, the smell of marijuana indisputably can still signal the possibility of criminal activity. Given this dichotomy, we conclude that the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search.

In so doing, we emphasize that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot. As recognized by the Commonwealth, the totality-of-the-circumstances analysis encompasses the consideration of factors that

---

[13] It, however, remains illegal to smoke this product. 35 P.S. § 10231.304(b)(1).

may arguably be innocent in nature. *See Gates*, 462 U.S. at 243 n.13 (providing that "[i]n making a determination of probable cause the relevant inquiry is not whether the particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts").

While this Court's analysis in *Hicks* does not directly resolve this appeal, we find that it substantially supports our conclusion in the matter *sub judice*.[14] Unlike the instant case, *Hicks* did not involve a warrantless search of a vehicle based exclusively upon a trooper's smell of marijuana. In *Hicks*, the defendant stopped at a gas station to fuel his vehicle, spoke with an acquaintance, and showed that individual his concealed firearm before he proceeded to enter the convenience store to pay for his gasoline. Surveillance camera footage revealed that the defendant was carrying the concealed weapon as he entered the store. Police officers had been alerted to this fact, and when the defendant exited the establishment, police officers seized him at gunpoint, removed him from his vehicle, and restrained him based exclusively upon his possession of a concealed firearm in public, which, it subsequently was determined, the defendant was licensed to possess and carry. During this incident, officers retrieved the defendant's firearm from a holster on his waistband, when they noticed the odor of alcohol emanating from him. They also discovered a small amount of marijuana in his pocket.

After being charged with, *inter alia*, driving under the influence of alcohol and possession of marijuana, the defendant filed a motion to suppress the evidence recovered in the search. The trial court denied suppression based upon the Superior Court's ruling

---

[14] As the Commonwealth emphasizes, we stated expressly in *Hicks* that "[o]ur holding is confined to the lawfulness of seizures based solely upon the possession of a concealed firearm – conduct that is widely licensed and lawfully practiced by a broad range of people." *Hicks*, 208 A.3d at 945; *see also id.* at 944 (expressly noting that the Court was not reaching any issue relating to the prohibition upon the possession of marijuana in light of the passage of the MMA).

in *Commonwealth v. Robinson*, 600 A.2d 957 (Pa. Super. 1991), which held that the "possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed." *Id.* at 959. The defendant in *Hicks* was subsequently convicted of driving under the influence of alcohol, and later appealed his judgment of sentence, challenging the denial of suppression. The Superior Court affirmed the defendant's judgment of sentence based on its previous decision in *Robinson*.

This Court granted allowance of appeal in *Hicks* to consider the viability of the *Robinson* holding. Upon close examination of the issue, we held that the *Robinson* rule subverts the fundamental protections of the Fourth Amendment and contravenes *Terry v. Ohio*, 392 U.S. 1 (1968), which requires law enforcement officers, in effectuating a lawful stop and frisk of an individual, to suspect reasonably: (1) that the person apprehended is committing or has committed a criminal offense; and (2) that the person stopped is armed and dangerous. *Hicks*, 208 A.3d at 921

In analyzing whether the requisites of *Terry* were established, this Court found "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public." *Hicks*, 208 A.3d at 936. Acknowledging that it is unlawful to carry a concealed firearm if the individual is statutorily prohibited from firearm ownership or unlicensed to carry a concealed firearm, we emphasized that it is not a criminal offense for a license holder to carry a concealed firearm in public. *Id.*

We explained that "[u]nless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a

criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity." *Id.* at 937. This Court reasoned that the *Robinson* rule eliminated the requirement of individualized suspicion, and misapplied the totality of the circumstances test. *Id.* Further, we explained, the *Robinson* rule impermissibly allowed the conduct for which the individual obtained a license to serve as the exclusive basis for the deprivation of the licensee's liberty. *Id.* at 940. Accordingly, we held that "with respect to the conduct at issue – in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully, [ ] that conduct alone is an insufficient basis for reasonable suspicion that criminal activity is afoot." *Id.* at 945.

Applying such jurisprudence to the facts presented, we conclude that if lawful possession of an item due to legislative authorization to possess it cannot, in and of itself, permit an officer to infer criminal activity for purposes of effectuating a *Terry* stop, lawful possession of an item pursuant to legislative authorization is alone insufficient to satisfy the more stringent requirement of probable cause of criminal activity required to conduct a warrantless search of a vehicle. *See Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004) (observing that the reasonable suspicion standard that must be satisfied to effectuate a *Terry* stop is less stringent than the probable cause standard).

The fact that the legislatively approved activity in the instant case differs from that at issue in *Hicks* does not alter our analysis. As in *Hicks*, the lawful activity cannot alone be the basis for probable cause to search a vehicle without a warrant. Like the carrying of a concealed weapon by a licensed individual in *Hicks*, it is simply not a crime for an individual to possess or use marijuana if the requirements of the MMA have been satisfied. Thus, one's liberty may not be abridged on the sole basis that a law enforcement officer detected the smell of marijuana, because, to do so, would eliminate

individualized suspicion required for probable cause and would misapply the totality-of-the-circumstances test. Notwithstanding, for the reasons set forth *supra*, consistent with the reasoning in *Hicks*, the lawful possession and use of marijuana, in conjunction with other articulable facts supporting a finding of probable cause, may be considered in the requisite analysis of the totality of the circumstances.

## VI.  Application

As we discussed in detail *supra*, the trial court concluded as a matter of fact that the troopers searched the vehicle in question based solely on the odor of marijuana emanating from that vehicle. The record supports this conclusion. By way of example, we observe that, during his cross-examination at the suppression hearing, Trooper Prentice stated on at least two occasions that he conducted a probable cause search of the vehicle in question based upon the smell of marijuana. N.T., 7/17/2019, at 69-70 and 71-72. Likewise, Trooper Heimbach explicitly stated that she searched the vehicle because she "detected the odor of burnt marijuana[.]" *Id.* at 128-29.

Further, unlike the Superior Court, we are unpersuaded by the Commonwealth's contention that the trial court failed to consider adequately other factors that could have established that the troopers had probable cause to search the vehicle. First, the trial court's opinion makes abundantly clear that the court was aware of Trooper Prentice's training and experience as it relates to narcotics. However, as we noted above, the court specifically concluded that the troopers' education related to marijuana was lacking as it was limited to walking past a controlled marijuana burn for a few seconds and that the "troopers lacked knowledge about the specifics of legal/medical marijuana and its usage." Trial Court Opinion, 8/2/2019, at 15-16 n.19.

Second, the characteristics of the neighborhood where the troopers stopped the vehicle are legally irrelevant to whether the troopers had probable cause to search the

vehicle. Specifically, the record makes clear that the troopers did not witness the occupants of the vehicle do anything suspicious from the time that the troopers initially observed the vehicle turn around until the time that the troopers eventually pulled over the vehicle for allegedly failing to stop properly. Because the troopers simply stopped the vehicle for a minor traffic violation and then smelled marijuana upon approaching the vehicle, it is of no moment whether the area in which the stop occurred is known as a "high crime area."

Third and last, the trial court's opinion reflects that the court was well aware of Appellant's statements and demeanor during the stop. *See, e.g.,* Trial Court Opinion, 8/2/2019, at 11 ("When Trooper Prentice overheard the passenger arguing with Trooper Heimbach and stating that 'no one is getting out of this fucking car,' Trooper Prentice walked back to the driver's side door."). Given this awareness, it is more than reasonable to conclude that the court implicitly discredited Trooper Prentice's contention that such behavior from a passenger is indicative of criminal activity.[15] The trial court acted within its discretion in this regard, and contrary to the Superior Court's assessment, the trial court was not obligated to elaborate in detail its reasons for reaching this conclusion.

## VII. Conclusion

We reiterate that the record supports the trial court's conclusion that the troopers searched the car in question based solely on the odor of marijuana coming from it. We further hold that the odor of marijuana alone does not amount to probable cause to conduct a warrantless search of a vehicle but, rather, may be considered as a factor in examining the totality of the circumstances. Consequently, here, the trial court properly granted Appellant's motion to suppress. For these reasons, we vacate the judgment of

---

[15] At the suppression hearing, Trooper Prentice stated that he was trained that, when a passenger takes over a traffic stop and becomes argumentative, "there's more than just a traffic violation going on." N.T., 7/17/2019, at 31.

the Superior Court, reinstate the trial court order granting Appellant's motion to suppress, and remand to the trial court for proceedings that are consistent with this opinion.

Justices Todd, Donohue and Wecht join the opinion.

Justice Saylor files a concurring opinion.

Justice Dougherty files a concurring and dissenting opinion in which Justice Mundy joins.

Justice Mundy files a concurring and dissenting opinion.